**In the Matter of Ronald L. KELLAM.**

Supreme Judicial Court of Maine.

Argued Jan. 21, 1986.

Decided Feb. 6, 1986.

Merle W. Loper, (orally), Portland, for Committee on Judicial Responsibility and Disability.

Preti, Flaherty & Beliveau, Christopher D. Nyhan, (orally), Evan M. Hansen, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

---

**PER CURIAM.**

This matter comes before the Supreme Judicial Court in the exercise of its original jurisdiction in judicial discipline matters. The Committee on Judicial Responsibility and Disability, by its report dated November 1, 1985, alleges that Judge Ronald L. Kellam, a District Court Judge at Large, violated the Code of Judicial Conduct in more than 40 specific instances and that those violations constitute a pattern of conduct warranting formal disciplinary action. Judge Kellam through counsel filed an answer denying the allegation of serious violations of the Code of Judicial Conduct. By stipulation of the parties, this case has been submitted to the Supreme Judicial Court on the testimony and exhibits presented in the hearing before the Committee for decision on questions of both fact and law, with the Committee having the burden of proving its allegations that Judge Kellam has violated the Code of Judicial Conduct.[1]

## I.

The Committee alleges that Judge Kellam (1) has engaged in a pattern of impatient, undignified and discourteous treatment of persons who have come before him in his capacity as a judge, and (2) has engaged in a pattern of depriving persons of their full right to be heard by arbitrarily interfering with the presentation of their cases or their testimony, without regard to the effect on the confidence of witnesses, parties, attorneys and the public generally in the integrity, competence and fairness of the judicial system. Persons complaining about Judge Kellam's conduct range from courtroom spectators and lay participants to attorneys and court personnel. The events complained of took place from 1982 to 1985 at District Court locations in Farmington, Portland, Biddeford, Springvale, Lewiston, Augusta, Kittery, Waterville, Skowhegan and Brunswick.

---

1. We have previously set forth the procedure followed in judicial disciplinary proceedings. *See Matter of Ross,* 428 A.2d 858, 859–60 (Me. 1981).

Specifically, the Committee charges that Judge Kellam's conduct violates Canons 1, 2(A), 3(A)(2–5) and 3(B)(1), but we focus primarily upon violations of Canon 3(A)(3) and (4), which describe the manner in which a judge must conduct judicial proceedings.[2] To the extent that we find violations of Canon 3(A)(3) and (4) we also find violations of the more general Canons 1 and 2(A), which concern the integrity of the judicial system.[3] *See Matter of Benoit,* 487 A.2d 1158, 1162 n. 3 (Me.1985).

## II.

Most serious among the Committee's allegations are those incidents of rude behavior directed toward lay persons with business before the court. We recognize that a judge at large, while traveling throughout the state, must function under many difficulties, including a heavy caseload and inadequate physical facilities. Indeed, our close examination of the evidence before us discloses some incidents that do not violate the Code of Judicial Conduct and some others that, properly evaluated, are not serious transgressions. We find overall, however, sufficient evidence of serious and repeated misconduct to warrant our public censure.

We need not engage in any detailed recitation of the pattern of impatient, undignified and discourteous conduct revealed in the evidence before us. Illustrative of Judge Kellam's rudeness are his comments to persons seeking protection from abuse orders. To a husband who testified concerning death threats from his wife he remarked that "You're here, aren't you? She didn't kill you yet." To a wife petitioning for protection from abuse he asked "He hasn't changed since he met you, why did you marry him?" and "Why do you want me to do something about it now?" Moreover, to a lay party in a small claims case who wanted to read something he said "No, we're not going to let you read it. If you don't know anything about this case, why don't you just say so in the beginning?" and "Well, we know you know how to read." On another occasion after ruling that an appraisal witness would not be permitted to testify he gratuitously told the potential witness "Are you the appraiser? I'm never going to listen to you. I'll tell you right now. I'm never going to listen to you. I have no need of appraisers." Judge Kellam asked the plaintiff in a divorce proceeding why her husband was not present for the hearing on an uncontested motion, and remarked "Well, he made it to the wedding, didn't he?" In the course of a public proceeding, Judge Kellam rudely and improperly ordered two workers from the Portland Family Crisis Shelter to leave the courtroom if they had no further business with the court.

Judge Kellam's demeanor on the bench frequently interfered with litigants' rights to a full and fair hearing. He recessed hearings at inopportune times and occasionally expressed reluctance to hear the case at all. His interruption of witnesses and litigants in small claims cases sometimes prevented any understandable presentation of the facts. This conduct and the effect on the lay litigants was observed and testified to by third parties present in the courtroom at the time. The reaction of lay litigants varied from their leaving the

---

**2.**    A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, and others with whom he deals in his official capacity. (Canon 3(A) (3))

. . . .

A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law. (Canon 3(A) (4))

**3.**    An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective. (Canon 1)

A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. (Canon 2(A))

courtroom in tears to stating a resolve to avoid Judge Kellam's courtroom. We also note that many of the incidents complained of occurred after Judge Kellam had been notified by the Committee on Judicial Responsibility that they were already investigating similar complaints.

In considering whether the pattern of such incidents amounts to a violation of the code, we must first examine the relevant canons. *Matter of Ross*, 428 A.2d 858, 861 (Me.1981). Canon 3(A)(3) specifically requires a judge to be patient, dignified and courteous to litigants, witnesses and others with whom he deals as a judge. Canon 3(A)(4) requires a judge to accord to every person legally interested in a proceeding a full right to be heard according to law. Each of these canons stresses the importance of a judge's action and demeanor in interacting with lay persons involved in court proceedings. They leave no doubt that a judge's courtroom behavior is a matter for which the judge is accountable to the public.

■ We have previously recognized that judicial accountability does not require all judges to be of precisely the same temperament or to have the same personal qualities and attitudes. *Ross*, 428 A.2d at 861. A judge's style and personality does not by itself suggest misconduct. *Id.* These canons, however, leave little room for judicial independence in the matter of courtroom manners. Regardless of personal style, a judge is required to show patience and dignity and to use common courtesy in daily interaction with members of the public.

■ Judge Kellam urges that we adopt for these canons the "reasonable judge" standard that we adopted for Canon 3(A)(1).[4] *See Benoit*, 487 A.2d at 1163. Canon 3(A)(1) pertains to legal and professional competence, and in the context of *Benoit*, involved error in decision-making. Because the balance between judicial independence and judicial accountability is most delicate in the area of judicial decision-making, we found it necessary to add the requirement that judicial conduct in that area violates Canon 3(A)(1) only "if a reasonably prudent and competent judge would consider that conduct obviously and seriously wrong in all the circumstances." *Id.* Our review of courtroom courtesy, on the other hand, will not usually implicate the legal or professional competence of the judge in his decision-making and therefore does not require a special standard. Courtroom courtesy is a duty owed to the public and is evaluated by us on behalf of the public from the perspective of the ordinary, reasonable person.

■ We determine that, in the conduct reported herein, a reasonable person would find a lack of patience, dignity and courtesy in Judge Kellam's actions and would have reason to doubt that he was being accorded the "full right to be heard according to the law." The incidents before us reveal a pattern of discourtesy to laypersons of such consistency and duration as to represent a serious violation of Canon 3(A)(3) and (4). These transgressions warrant discipline.

In testifying before the Committee, Judge Kellam attempted to explain his behavior on the basis of administrative necessity and the practical problems created by a litigant's appearance in court without an attorney. Administrative problems in any court are real and ever present, and this is particularly true in Maine's overburdened District Court. Although such problems strike a responsive chord in the judicial ear, they do not justify rudeness, insensitivity and discourtesy. Judge Kellam professes to believe that the present complaints arise out of his efforts to be helpful, accommodating and efficient within the constraints imposed by the judicial system. Such a paradox can only be explained by an abject

---

4. A judge should be faithful to the law and maintain professional competence in it....

(Canon 3(A) (1) )

failure to appreciate that the litigant has no understanding of the constraints as perceived by Judge Kellam. By announcing his actions rudely, brusquely and without explanation, he creates the impression of judicial arrogance and indifference. It is difficult to assess whether he intends to create that impression, but it is beyond dispute that he should recognize the result.

### III.

■ We have previously recognized our power, as well as our responsibility to prescribe the conduct of all judges of this State and to discipline judges for violations of the Code of Judicial Conduct. *Benoit,* 487 A.2d at 1170; *Ross,* 428 A.2d at 868. As we said in both *Benoit* and *Ross,* in determining appropriate disciplinary sanctions, we must be careful to assure the orderly administration of justice in the public interest. *Benoit,* 487 A.2d at 1174; *Ross,* 428 A.2d at 868. Sanctions are not for vengeance or retribution. *Benoit,* 487 A.2d at 1173; *Ross,* 428 A.2d at 868. We must design sanctions to restore and reaffirm public confidence in the administration of justice, and to announce publicly our recognition and condemnation of judicial misconduct. *Benoit,* 487 A.2d at 1174; *Ross,* 428 A.2d at 868–69. A sanction must be sufficient to deter the individual judge from future misconduct and to discourage others from engaging in similar conduct. *Benoit,* 487 A.2d at 1174; *Ross,* 428 A.2d at 869.

■ In determining an appropriate sanction, we must assess the seriousness of Judge Kellam's behavior in relation to other forms of judicial misconduct. Although discourtesy does not constitute an error or violation of law in the decision-making process, such conduct on the part of a judge is particularly egregious because it undermines respect for the law in a most insidious manner. Our appellate process effectively corrects judicial error and the mere occurrence of such error does not usually inflict lasting damage upon our system of laws. On the other hand, a litigant who is subjected to rude and insensitive treatment is left without recourse. Whether the litigant wins or loses, the end result is an irreparable loss of respect for the system that tolerates such behavior. We conclude that a pattern of judicial discourtesy represents a profound threat to the institution of the law and requires a strong response.

■ We believe that Judge Kellam is capable of rendering competent service on the bench, provided he does not repeat conduct such as that before us. The sanctions we impose seek to uphold the integrity of the law, discourage any repetition of such misconduct, and facilitate the opportunity for further public service. We impose a public censure, in the form of this opinion, expressing our condemnation of Judge Kellam's violation of the Code of Judicial Conduct and informing the public of that fact. We further impose a disciplinary suspension together with a forfeiture of salary to emphasize the seriousness of Judge Kellam's misconduct and to reflect the vital role of common courtesy in our system of justice.

Upon full consideration it is ADJUDGED that Judge Ronald L. Kellam has violated Canons 1, 2, and 3 of the Code of Judicial Conduct.

It is ORDERED that he be, and he hereby is censured for those violations. It is FURTHER ORDERED that he be, and he hereby is suspended from his duties as a judge of the District Court until February 26, 1986, and that prior to June 1, 1986 he forfeit the amount of $3,500 from the salary otherwise payable to him.

All concurring.