**Matter of Judge John W. BENOIT, Jr.**

Supreme Judicial Court of Maine.

Argued March 12, 1987.
Decided April 7, 1987.

---

Merle W. Loper (orally), Portland, for Committee on Judicial Responsibility and Disability.

John W. Benoit, Jr. (orally), Skowhegan, pro se.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

PER CURIAM.

This matter invokes the Supreme Judicial Court's original jurisdiction over judicial disciplinary matters.[1] The Committee on Judicial Responsibility and Disability (Committee), by its Report dated December 9, 1986, alleges that District Court Judge John W. Benoit, Jr. violated Canons 1, 2(A), and 3(A)(6) of the Code of Judicial Conduct (Code), and that such violations warrant the imposition of formal disciplinary action. The case is submitted on the pleadings before this Court and the pleadings and record before the Committee.

It is with deep regret that the Court sits, for a second time, to consider a disciplinary matter involving this judge.[2]

---

1. The procedure we follow in such matters is set forth in *Matter of Ross,* 428 A.2d 858, 859–60 (Me.1981).

2. In February, 1985, we suspended Judge Benoit from his judicial duties for failing to "be faithful to the law and maintain professional competence in it" in violation of Canons 2(A) and 3(A)(1) of the Code. *See Matter of Benoit,* 487 A.2d 1158 (Me.1985).

## FACTS

In a written opinion dated January 13, 1986, the Superior Court (Somerset County), in nine criminal cases, vacated sentences that had been imposed by Judge Benoit in his capacity as resident judge for District XII of the Maine District Court. The opinion stated that the cases would be "remanded for sentence to the judge who initially dealt with them." Judge Benoit read that opinion and subsequently wrote letters to the editors of four Maine newspapers, in which he both criticized the Superior Court's decision and defended the sentences he had previously imposed. He also commented upon the facts of the cases and the sentencing factors that were applied. Various newspapers throughout the state published his letters, which were identical in content, on or about January 24, 1986.

Judge Benoit's letter came to the attention of the attorney who represented the defendants whose sentences were vacated. Because of his concern that his clients might not be treated fairly upon appearing before Judge Benoit for resentencing, he filed a motion on February 5, 1986, seeking the judge's recusal from those pending proceedings; at the same time, he notified the Committee that he believed Judge Benoit was acting in violation of the Code of Judicial Conduct. On February 19, 1986, Judge Benoit granted the attorney's motion and recused himself from the resentencing proceedings.

## ISSUE PRESENTED

We dispel at the outset any perception that this disciplinary matter is before us because of the sentencing practices of this judge in "operating under the influence" cases. We review neither Judge Benoit's sentences nor the decision of the Superior Court that vacated those sentences on appeal. The sole issue before the Court is whether Judge Benoit has violated the Code of Judicial Conduct by making public comments on pending cases.

## DISCUSSION OF THE LAW

The Code of Judicial Conduct establishes minimum standards of conduct that must be observed by judges in order to preserve and maintain the independence and integrity of this State's judiciary. *See Matter of Ross*, 428 A.2d 858, 861 (Me.1981). The essence of the Code is expressed in Canon 1, which provides:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

Of equal importance, Canon 2(A) provides:

A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity of the judiciary.

A judge who fails to conform his conduct to the minimum standards of other Canons of the Code, is, by definition, in violation of the general requirements of Canons 1 and 2(A). *See Matter of Kellam*, 503 A.2d 1308, 1310 (Me.1986).

The most fundamental value advanced by the Code of Judicial Conduct is fairness in the administration of justice. It is this concept, understood throubout the entire structure of our democratic society, that fosters public confidence in the judicial system. In furtherance of such traditional notions of fair play, Canon 3 is designed to ensure that judges act impartially in the performance of their judicial responsibilities.[3]

---

**3.** Canon 3 provides, in pertinent part:

**A Judge Should Perform the Duties of His Office Impartially and Diligently**

The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

**A. Adjudicative Responsibilities.**

(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.

Canon 3(A)(6) specifically provides: "A judge should abstain from public comment about a *pending* or impending proceeding in *any* court." (Emphasis added.) This Canon prevents a judge from publicly prejudging or creating the appearance that he is prejudging any aspect of an issue that has not been finally decided. It thereby minimizes the risk that such comments will either unfairly prejudge individuals' rights or create a public impression that citizens are not being treated fairly because different judges may not agree as to how those citizens' rights should be decided under the law.

It is difficult to conceive of a more egregious violation of the plain proscription of Canon 3(A)(6) than that which has occurred in this case. By publishing his letters, the content of which made readily apparent his lack of impartiality, Judge Benoit, at the very least, created the appearance that the judicial system was unfair. More specifically, citizens, whose legal rights and freedoms were at risk, were subjected to a public prejudgment of their cases by the very judge who was assigned to reimpose sentence.[4] We cannot tolerate such a conspicuous display of judicial bias regarding pending cases.[5]

Judge Benoit argues that when he wrote the letters, the sentences upon which he commented were not "pending" proceedings, but were "final" because the Superior Court's ruling could not be appealed to the Maine Supreme Judicial Court. In presenting this argument, Judge Benoit exhibits an inability to understand the plain language of the Code. Whether or not the Superior Court's ruling was appealable is not relevant to the issue of whether proceedings were pending in the nine criminal cases affected by that ruling. Having read the opinion of which his letters were critical, Judge Benoit, at the time of their writing, unquestionably knew that the cases upon which he was commenting were remanded to him for resentencing. Thus, those cases were *pending* proceedings, not just in *any* court, but before him, personally, in a court in which he was the resident judge. His argument that they were not "pending" in any court because they could not be appealed to the Maine Supreme Judicial Court is totally without merit.

Without question, by writing and publishing his letters, Judge Benoit violated Canons 1, 2(A), and 3(A)(6) of the Code of Judicial Conduct.

### SANCTIONS

Judge Benoit's violation of the Code clearly requires the imposition of sanctions by this Court. We do not regard his conduct, as he suggests, to be a mere technical violation of the Code. We need not reiterate the pertinent considerations involved in fashioning an appropriate sanction for violations of the Code of Judicial Conduct,

(2) A judge should maintain order and decorum in proceedings before him.

(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others while subject to his direction and control.

(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, he should not permit *ex parte* communications intended to influence his judicial action.

(5) A judge should dispose promptly of the business of the court.

(6) A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel while subject to his direction and control.

This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.

4. We note that Canon 3(A)(6) does not prohibit judges from "making public statements in the course of their official duties or from explaining for public information the procedures of the court." Neither of these exceptions apply to Judge Benoit's comments.

5. It is of no consequence that Judge Benoit may have subjectively intended to recuse himself. Indeed, we find his claim in this regard difficult to accept since subsequent to publication of the letters, he permitted a period in excess of three weeks to elapse before disqualifying himself, and, in fact, did not act to disqualify himself until a motion was filed that he do so.

see, e.g., *Matter of Benoit,* 487 A.2d 1158, 1173–74 (Me.1985). In reviewing the circumstances of this case, we are influenced by the fact that this judge has not benefitted from the previous sanctions we have imposed for noncompliance with the Code of Judicial Conduct. *See id.* In this regard, we take note of the frivolous nature of his argument regarding the appealability of the Superior Court decision.

We find it difficult to believe that he could maintain such an argument with intellectual candor. Even ignoring the absence of any merit in such an argument, we find it perplexing that he persisted in this claim as a viable explanation for his injudicious conduct when the basic unfairness wrought by his letters should be clear even to those unschooled in the law.

Furthermore, we cannot overlook the artificial, secondary defense of his behavior that he raised when appearing before the Committee. In reliance upon his erroneous notion of a "pending" proceeding, Judge Benoit responded to the Committee's charge by contending that when he wrote the letters, he believed in good faith that the Superior Court's ruling could not be appealed and was therefore, in his mind, "final." It is clear, however, that he could not have believed the Superior Court's order was nonappealable when he wrote the letters because in those letters he expressly stated, "I have asked the Maine attorney general to seek a review of the Somerset County Superior Court ruling." His obvious lack of candor before the Committee places him in a very unfavorable light.

Apparently realizing the folly of his "good faith" argument, Judge Benoit reversed his position before this Court by candidly admitting that when he wrote the letters, he did not know whether the Superior Court ruling was "final." Ignoring, for the moment, Judge Benoit's misunderstanding of what constitutes a pending legal proceeding, it is clear from his admission that he did not write the letters under a "good faith" belief that he was complying with Canon 3(A)(6). Indeed, the evidence persuades us that the plain and obvi-

ous language of Canon 3(A)(6) was far from his mind when he wrote the letters.

We find particularly troublesome, Judge Benoit's stubborn refusal to acknowledge a clear violation of Canon 3(A)(6). Instead of recognizing the error of his ways, he has advocated before the Committee and the Court a specious interpretation of the Code and presented a transparent claim that he acted in good faith. Such a disingenuous response to formal charges of misconduct hardly befits a judge.

Accordingly, we conclude that the sanction we impose must include a public censure. The publication of this opinion approximately two years after a previous censure by this Court constitutes a censure of even more severe consequence than the earlier rebuke. In addition, a disciplinary suspension from the performance of judicial duties for a period of one week is appropriate. We further conclude that a monetary sanction of $1,000.00, recoverable from the judge's salary, is in order. Finally, we require, as an appropriate further sanction, that Judge Benoit, within one year from the date of this decision, at his own expense and employing his vacation time, complete a substantial course of study in Judicial Ethics and related matters approved by the Court.

Through these sanctions, we undertake the restoration of public confidence in our judicial system. *See Matter of Ross,* 428 A.2d at 868–69. By this opinion, we announce our condemnation of the judicial misconduct that has made that restoration necessary. *Id.*

It is ADJUDGED that Judge John W. Benoit, Jr. has violated Canons 1, 2(A), and 3(A)(6) of the Code of Judicial Conduct.

It is ORDERED that he be, and is hereby censured for those violations. It is FURTHER ORDERED that, commencing on May 4, 1987, he be, and hereby is, suspended from the performance of his duties as a judge of the District Court for a period of one week, and that prior to June 1, 1987, he forfeit the amount of $1,000.00 from the salary otherwise payable to him. It is FURTHER ORDERED that, within one year from the date of this decision, at his

own expense and employing his vacation time, he complete a substantial course of study in Judicial Ethics and related matters approved by the Court.

All concurring.