**In the Matter of David M. COX.**

Supreme Judicial Court of Maine.

Argued Aug. 31, 1987.
Decided Oct. 28, 1987.

Merle W. Loper (orally), Committee on Judicial Responsibility and Disability, Portland, for appellant.

George Z. Singal (orally), Gross, Minsky, Mogul & Singal, P.A., Bangor, for respondent.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK, and CLIFFORD, JJ.

PER CURIAM.

This matter invokes the Supreme Judicial Court's original jurisdiction over judicial disciplinary matters. The Committee on Judicial Responsibility and Disability, by its report dated May 22, 1987, alleges that District Court Judge David M. Cox violated Canons 1, 2(A), 2(B) and 3(A)(3) of the Maine Code of Judicial Conduct and that those violations warrant formal disciplinary action. By stipulation of the parties, this case has been submitted on the pleadings before this court and the pleadings and record before the Committee.[1]

I.

On the morning of May 1, 1986, Judge Cox was in his chambers in the District Court in Bangor with an attorney representing Judge Cox's son, who had been arrested for speeding on a motorcycle in Brewer two nights earlier. During the course of their conversation regarding the

**1.** The procedure followed in judicial disciplinary proceedings is set forth in *Matter of Ross,* 428 A.2d 858, 859–60 (Me.1981).

arrest of his son, Judge Cox asked the attorney to have Charles Shuman come into his chambers with them. Mr. Shuman is the Brewer police captain who regularly served as court officer managing his department's cases before Judge Cox in the Bangor District Court. The attorney opened the door that led into an anteroom just outside the judge's chambers and asked Captain Shuman to come into chambers. After Captain Shuman entered, Judge Cox began shouting and swearing at him because of the manner in which the Brewer police officers had dealt with his son's motor vehicle violation. Judge Cox was upset that the Brewer police had arrested his son and transported him to the police station for booking rather than simply issuing a summons for his court appearance and dropping him off at his home, which was on the route to the police station. Captain Shuman maintained his composure throughout the meeting with Judge Cox and explained that the Brewer police officers had followed the procedures regularly employed in cases involving grossly excessive speed. Judge Cox spoke in a loud voice during much of the conversation and could be heard, in part, by others outside the judge's chambers.

Judge Cox also made statements expressing his concern about his ability to remain impartial in processing arraignments involving the Brewer Police Department scheduled later that morning. After composing himself, Judge Cox did hear those arraignments and also participated in a scheduling conference with Captain Shuman, who felt that the judge treated him in a regular and professional way in those matters. Captain Shuman, who has been a personal friend of Judge Cox for more than twenty years, was still concerned about the nature of the original conversation and, after finishing his court business, went to the District Attorney and requested that that office monitor Judge Cox's conduct in future Brewer police department cases. There has not, in fact, been any indication of discriminatory treatment of Brewer cases by Judge Cox nor was there any evidence that he ever attempted to influence the proceedings or the outcome in his son's case, which was processed before a different judge of the District Court.

Everyone who was present during the conversation stated that Judge Cox was greatly concerned about his open-heart surgery that was scheduled to occur within a few days after the May 1 conversation, and that he was disturbed by his son's conduct. Upon returning to work in late June, after the surgery and before the incident in question became widely known, Judge Cox, on his own initiative, invited Captain Shuman into his chambers and apologized to him for the May 1 incident. Captain Shuman has characterized these comments as "a humble apology."

## II.

"The Code of Judicial Conduct establishes minimum standards of conduct that must be observed by judges in order to preserve and maintain the independence and integrity of this State's judiciary." *Matter of Benoit*, 523 A.2d 1381, 1382 (Me. 1987). In the instant matter, the Court is asked to determine whether Judge Cox has violated Canons 1, 2(A), 2(B) and 3(A)(3).[2]

2. These Canons provide as follows:

**Canon 1. A Judge Should Uphold the Integrity and Independence of the Judiciary**

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

**Canon 2. A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities**

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.

Judge Cox's angry conversation with a police officer assigned to his court concerning the procedures used in his son's arrest created at the very least the appearance of impropriety. Captain Shuman's concern about Judge Cox's impartiality after the meeting led him to request the District Attorney's office to monitor Judge Cox's conduct in subsequent Brewer police cases. The appearance of impropriety alone violates provisions of Canons 1 and 2(A), which state respectively that "[a] judge should ... observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved," and that "[a] judge should ... conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Judge Cox's conversation presents more than an appearance of impropriety. It also constitutes a specific violation of Canon 2(B) which states in its first phrase: "A judge should not allow his family ... relationships to influence his judicial conduct or judgment." We cannot merely dismiss the unfortunate conversation in Judge Cox's chambers as a private discussion between two old friends in which the judge lost his temper. Since Judge Cox's loud berating of Captain Shuman could be heard by others, the conversation was not private in the strict sense of the word. Nevertheless, whether the conversation was public or private is immaterial. Canon 1 requires a judge to observe "high standards of conduct." Canon 2(A) requires him to "conduct himself *at all times* in a manner that promotes confidence in the integrity and impartiality of the judiciary." (emphasis added). Canon 2 states in full that "A judge should avoid impropriety and the appearance of impropriety in *all his activities.*" (emphasis added). The Code's standard of conduct therefore applies to any incident or conversation, public or private, that could constitute or create the appearance of impropriety.

In this instance, Judge Cox allowed his anger over the procedure employed in the arrest of a family member to influence his conduct as a judge. His conversation with Captain Shuman took place during working hours when both individuals were at court in their official capacities, and the judge's anger over his son's arrest was the sole reason he initiated the meeting with Captain Shuman in his chambers. Although family relationships did inappropriately influence Judge Cox's judicial conduct, we underscore the fact that there is absolutely no indication that he ever allowed it to influence his impartial handling of any case concerning the Brewer Police Department, or that he was in any way involved in the proceedings or the outcome in the case against his son.

Canon 3(A)(3) states in part: "A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity...." It is clear that in his remarks Judge Cox was impatient, undignified, and discourteous to Captain Shuman and the police department he represented. Although this Court has recognized that "judges are merely human" and that "[i]ntemperate language is on occasion understandable, but ... abusive language is inexcusable." *Matter of Ross,* 428 A.2d at 866; *see Matter of Kellam,* 503 A.2d 1308, 1311 (Me.1986). Judge Cox's language and tone in the conversation in question regrettably sank below an acceptable level.

### III.

Because the inherent nature of the incident, which dealt with a judge's own personal and family interests, strikes at the heart of the public's perception of judicial impartiality, these violations of the Code mandate formal disciplinary action.

---

**Canon 3. A Judge Should Perform the Duties of His Office Impartially and Diligently**

The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

*A. Adjudicative Responsibilities.*

. . . .

(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity ...

Through the sanction we hereby impose, we seek to reassure the public that judicial misconduct, despite extenuating circumstances, is neither permitted nor condoned, and we undertake the restoration of public confidence in the impartial administration of justice.

It is ADJUDGED that Judge David M. Cox has violated Canons 1, 2(A), 2(B) and 3(A)(3) of the Code of Judicial Conduct.

It is ORDERED that he be, and he hereby is, reprimanded for those violations.

All concurring.