MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2024 ME 71
Docket:      Jud-24-1
Argued:      July 30, 2024
Decided:     September 17, 2024

Panel:       STANFILL, C.J., and HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

IN RE WILLIAM B. BLAISDELL IV


PER CURIAM

[¶1]  In March 2024, the Committee on Judicial Conduct filed a report with us[1] alleging that Hancock County Probate Judge William B. Blaisdell IV committed three violations of the Code of Judicial Conduct.[2]  Specifically, the Committee alleged that Judge Blaisdell

(1)    violated Rule 1.1 of the Code by failing to file federal and state income tax returns for the years 2020, 2021, and 2022; failing to pay court-ordered child support and attorney fees; and acting in contempt of the District Court in a family matter in which he was a party;

(2)    violated Rule 2.16(A) of the Code by failing to respond to the Committee on Judicial Conduct despite repeated requests that he do so; and

---

[1]  This matter is within our original jurisdiction as the Supreme Judicial Court, and we are not sitting as the Law Court here.  *See* 4 M.R.S. § 9-B (2024); M.R. Comm. Jud. Conduct 3.

[2]  We have previously described the Committee as "function[ing] as an investigative agency similar to a grand jury in criminal proceedings.  The report of the Committee is nothing more than a charging document containing the Committee's allegations concerning the conduct of the respondent.  The burden is on the Committee to prove those allegations before the full Court."  *In re Ross*, 428 A.2d 858, 860 (Me. 1981).

    (3)    violated Rule 2.16(A) of the Code by acting with a lack of candor in asserting that he never received letters from the Committee.[3]

Judge Blaisdell concedes that his conduct violated the rules, as the Committee alleged. The question before us is what sanctions to impose on Judge Blaisdell. We heard oral argument from the parties and have considered the record and the parties' submissions. We now censure Judge Blaisdell; suspend him as a judge for a term of one year, with all but four months of the suspension suspended, provided that Judge Blaisdell satisfies the conditions set forth below; and order that he forfeit $10,000 from the salary otherwise payable to him, representing four months of salary for the period when Judge Blaisdell will not be serving as a probate judge.

## I. BACKGROUND

[¶2] The facts are not in dispute. Judge Blaisdell was a party to post-divorce proceedings in the District Court over a course of years beginning in October 2021. In that proceeding, Blaisdell admitted that he had not filed federal or state income tax returns for 2020, 2021, or 2022, and possibly had not done so for 2019. Judge Blaisdell also failed to file required financial

---

[3] Rule 1.1 of the Maine Code of Judicial Conduct provides, "A judge shall comply with the law and the Maine Code of Judicial Conduct." Rule 2.16(A) provides, "A judge shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies."

documents in the District Court matter despite the order of the court (Belfast, *E. Walker, J.*) that he do so and was sanctioned for that failure. These actions led the presiding judge to report Judge Blaisdell to the Committee.

[¶3] On March 8, 2024, the court (*Worth, A.R.J.*) held a hearing on a motion for contempt filed by Judge Blaisdell's former wife. The court found Judge Blaisdell in contempt for failing to produce documents in discovery as required and for failing to pay court-ordered child support and attorney fees despite having the means to do so. The court ordered him to pay child support and accrued interest of $30,345.33, attorney fees and accrued interest of $13,386.03, and additional attorney fees plus interest for his former wife's expenses of litigating the contempt motion. As a sanction for the contempt, the court sentenced Judge Blaisdell to ninety days in jail but stayed execution of the sentence until March 25, 2024, providing Judge Blaisdell with the opportunity to purge himself of contempt by paying the $43,731.36 owed in child support, attorneys fees, and accrued prejudgment interest by that date. Judge Blaisdell purged his contempt by paying $50,000 on March 20, 2024.

[¶4] The Committee sent Judge Blaisdell a letter dated November 6, 2023, enclosing the report it had received from the District Court judge and seeking a response from Judge Blaisdell by December 18, 2023. Judge Blaisdell

4

did not respond by that date. The Committee's Executive Secretary called Judge Blaisdell, and Judge Blaisdell denied having received the Committee's letter. The Committee sent the letter again two more times. After the second time, Judge Blaisdell again denied having received the letter. After the third time, the Executive Secretary was unable to reach Judge Blaisdell. None of the letters were returned to the Committee as undeliverable. The Committee then sent another letter to Judge Blaisdell on February 22, 2024, by certified mail, return receipt requested, conveying its intent to file a report to us and informing Judge Blaisdell of his right to request a hearing within twenty-one days. Judge Blaisdell did not request a hearing within that period. The Committee made its report to us on March 28, 2024.

[¶5] We ordered Judge Blaisdell to file a response to the report on or before April 19, 2024, indicating that if he failed to respond, the procedural history and facts presented in the report would be conclusively established for purposes of the proceeding and he would be deemed to have violated the Code of Judicial Conduct as alleged. Judge Blaisdell did not file a response by that date, and thus the facts alleged were established and we deemed him to have violated Rules 1.1 and 2.16(A) of the Code. We entered a second procedural order allowing each party to file a memorandum regarding the sanction to be

imposed.  The Committee and Judge Blaisdell each submitted a memorandum concerning sanctions.  After conferring with the parties, we held oral argument on July 30, 2024, regarding the sanctions, if any, to be imposed on Judge Blaisdell.

## II.  DISCUSSION

[¶6]  We have "the inherent authority to impose a variety of sanctions as judicial disciplinary measures."  *In re Nadeau*, 2017 ME 121, ¶ 61, 168 A.3d 746.

> Available sanctions include, but may not be limited to, requirements for obtaining appropriate assistance or ethics education, censure, reprimand, forfeiture of funds, suspension from duties, and disbarment or the lesser sanction of suspension from the practice of law. *See, e.g., In re Nadeau*, 2016 ME 116, ¶ 50, 144 A.3d 1161 (censure, reprimand, suspension from judicial duties); *In re Nadeau*, 2007 ME 35, ¶ 7, 916 A.2d 200 (censure, suspension which would be reduced upon enrollment in the Maine Assistance Program and completion of judicial ethics course, forfeiture of $1,000); *In re Cox*, 658 A.2d [1056,] 1058 (Me. 1995) (disbarment); *In re Benoit*, 523 A.2d 1381, 1384-85 (Me. 1987) (censure, suspension, forfeiture of $1,000, required course in judicial ethics); *In re Kellam*, 503 A.2d 1308, 1312 (Me. 1986) (censure, suspension, forfeiture of $3,500); *In re Benoit*, 487 A.2d 1158, 1174-75 (Me. 1985) (censure, suspension, forfeiture of $1,000); *In re Ross*, 428 A.2d [858, 869 (Me. 1981)] (suspension).

*In re Nadeau*, 2017 ME 121, ¶ 61, 168 A.3d 746 (footnote omitted).  The Committee urges us to refer this matter to the Legislature for possible removal of Judge Blaisdell from office.  Judge Blaisdell counters that we should order an entirely suspended suspension with conditions similar to those that have now

been imposed upon him in a parallel bar disciplinary matter. *See Bd. of Overseers of the Bar v. Blaisdell*, BAR-24-07 (Aug. 16, 2024) (Martemucci, J.).

[¶7] In imposing discipline, we seek to find a sanction that will "preserve the integrity and independence of the judiciary and . . . restore and reaffirm the public confidence in the administration of justice." *In re Ross*, 428 A.2d at 868.

> Any sanction must be designed to announce publicly our recognition that there has been misconduct; it must be sufficient to deter the individual being sanctioned from again engaging in such conduct and to prevent others from engaging in similar misconduct in the future. Thus, we discipline a judge to instruct the public and all judges, ourselves included, of the importance of the function performed by judges in a free society. We discipline a judge to reassure the public that judicial misconduct is neither permitted nor condoned. We discipline a judge to reassure the public that the judiciary of this state is dedicated to the principle that ours is a government of laws and not of men.

*Id.* at 868-69. We aim to impose a sanction that will neither "minimize the seriousness of the misconduct involved" nor "be unjustly vindictive." *Id.* at 869.

[¶8] In times of decreasing public trust and confidence in the judiciary across our country,[4] it is more important than ever to "design sanctions to restore and reaffirm public confidence in the administration of justice, and to

---

[4] *See* Nat'l Ctr. for State Cts., *State of the State Courts 2023 Poll*, https://www.ncsc.org/__data/assets/pdf_file/0038/96878/SSC_2023_Presentation.pdf [https://perma.cc/2TRR-FTDM] (reporting a general decline in public confidence in the courts over the course of several years).

announce publicly our recognition and condemnation of judicial misconduct." *In re Kellam*, 503 A.2d at 1312. That Judge Blaisdell's failure to file tax returns and his contemptuous behavior occurred in the sphere of his personal life and not in his capacity as a judge provides little mitigation. As we said in another case where the violative conduct occurred during the judge's self-representation in a personal matter, "[t]he Code's reach beyond the bench to conduct such as that at issue here was necessary because judges are the face of the judiciary, and their extra-judicial conduct and activities—like their conduct in the judicial role—reflect on the court system." *In re Nadeau*, 2016 ME 116, ¶¶ 7, 10, 144 A.3d 1161; *see In re Cox*, 658 A.2d at 1057-58 (exercising our authority to impose disbarment as a sanction for a judge who was found individually liable for fraud and punitive damages but was no longer a judge when sanctions were imposed, stating, "In light of Cox's avaricious and dishonest conduct, a mere fine or public condemnation cannot adequately express our grave disapproval and will do little to restore the public's confidence in the judiciary" (citation omitted)).

[¶9] We have considered many factors in determining an appropriate sanction, guided primarily by the preamble to the Code of Judicial Conduct, which provides, "Whether discipline is warranted should be determined

through a reasonable and reasoned application of the Rules, with consideration given to the seriousness of the transgression, the extent of any pattern of improper activity, any history of previous violations, and the effect of the improper activity upon the judicial system or others." Among the factors we have considered are the judge's professional history, *In re Nadeau*, 2017 ME 121, ¶ 60, 168 A.3d 746; the context within which the violations occurred, *id.*; any harm to litigants or the public, *id.*; *see, e.g.*, *In re Benoit*, 487 A.2d at 1174; the seriousness of the violations, *In re Nadeau*, 2017 ME 121, ¶ 60, 168 A.3d 746; whether the judge acknowledged the violations and understood the impact of them, *id.*; *In re Nadeau*, 2016 ME 116, ¶ 47, 144 A.3d 1161; *In re Holmes*, 2011 ME 119, ¶ 7, 32 A.3d 1011; "the prospects for ensuring public trust and confidence in the judge's work in the future," *In re Nadeau*, 2017 ME 121, ¶ 60, 168 A.3d 746 (quotation marks omitted); *see, e.g.*, *In re Holmes*, 2011 ME 119, ¶ 7, 32 A.3d 1011; the inherent harm caused by a misuse of judicial office, *In re Nadeau*, 2016 ME 116, ¶ 46, 144 A.3d 1161; whether the violation was for personal gain, *see In re Ross*, 428 A.2d at 869; and whether the judge engaged in repeated ethical violations, *In re Nadeau*, 2016 ME 116, ¶¶ 48-50, 144 A.3d 1161; *see In re Holmes*, 2011 ME 119, ¶ 7, 32 A.3d 1011, including

violations of the rules governing attorney conduct, *see In re Nadeau*, 2007 ME 35, ¶ 4, 916 A.2d 200.

[¶10]  Judge Blaisdell has acknowledged the violations of the Code and has apologized.  He has taken steps to mitigate, treat, and monitor his behavior. He has contacted the Maine Assistance Program for Lawyers and Judges (MAP) and sought its assistance; he is engaged in mental health treatment and a support group; he is checking in with another attorney; and he is taking care of his health.  All of these actions are mitigating factors.

[¶11]  Several other factors, however, weigh against leniency.  Judge Blaisdell still has not filed his tax returns.  As he acknowledged at oral argument, he had the means to pay the sums due in the post-divorce matter at least as early as December 2023, yet he did not pay until about two weeks after the March 8, 2024, contempt finding.  Of particular significance, Judge Blaisdell professes to understand the impact his conduct has had,[5] yet he seems to separate his personal conduct from his conduct as a judge without

---

[5] As noted by the trial court in its contempt order,

> The effect of [Blaisdell's] failure and refusal to pay child support and legal fees as ordered has been difficult for [his former wife].  His contempt has had an adverse effect on the children's best interests. [His former wife] has had to pay her legal fees using credit cards, incurring interest fees. She has had a difficult time paying for food, and for gas and repairs for the vehicle she uses to transport the children.

understanding that they are intertwined. Moreover, although he repeatedly stated at oral argument that he took full responsibility for his actions, when pressed, he explained why he missed the contempt hearing and took responsibility for that rather than the underlying failure to pay any overdue amount before then.

[¶12] We view Judge Blaisdell's misconduct as egregious and deserving of significant sanction. Disobedience of a court order by anyone is serious, but contempt of a court order by a sitting judge cannot be tolerated. We cannot expect the public to have respect and confidence in our courts when a judge himself flouts court orders.

> Judges are held to higher standards of integrity and ethical conduct than attorneys or other persons not invested with the public trust. This heightened standard of conduct extends beyond the limits of the judge's court, for a judge's duty does not stop at the robing room door. Even in a judge's personal life, he or she must adhere to standards of probity and propriety far higher than those deemed acceptable for others.

1 Charles Gardner Geyh et al., *Judicial Conduct and Ethics* § 1.02, LEXIS (updated through 2023) (footnotes and quotation marks omitted). As we have previously explained, "This important observation explains why a judge's conduct, even outside of the direct exercise of judicial responsibilities, remains

subject to the ethical constraints created by the Code." *In re Nadeau*, 2016 ME 116, ¶ 10, 144 A.3d 1161.

[¶13] The Committee requests that we sanction Judge Blaisdell by referring this matter to the Legislature for removal from office, acknowledging that we do not have the ability to remove Judge Blaisdell from office ourselves. A judge may be removed from a judicial office only by impeachment or by address of both branches of the Legislature to the executive. *See* Me. Const. art. IV, pt. 1, § 8; Me. Const. art. IV, pt. 2, § 7; Me. Const. art. VI, § 4; Me. Const. art. IX, § 5.[6] We have observed that removal from office is "so difficult to effect that the other branches might be hesitant to undertake [it]." *In re Benoit*, 487 A.2d at 1171. If removal is not effected by the Legislature for any reason, a referral for removal would be tantamount to no sanction at all.

[¶14] We are also mindful that a referral to the Legislature without any other sanction may be viewed as an abdication of our power, and indeed our obligation, to discipline judges where warranted. The exercise of that power

---

[6] If the method used for removal is by address of the two legislative branches, the address may not be passed in either the House of Representatives or the Senate until "the causes of removal shall be stated and entered on the journal of the House in which it originated, and a copy thereof served on the person in office, that the person may be admitted to a hearing in that person's own defense." Me. Const. art. IX, § 5. If the method used for removal is impeachment, the House of Representatives has "the sole power of impeachment," Me. Const. art. IV, pt. 1, § 8, and the Senate has "the sole power to try all impeachments," Me. Const. art. IV, pt. 2, § 7.

12

and obligation "is essential for the efficient provision of even-handed justice for the people of Maine." *Id.*

[¶15] Having all of these principles in mind, we conclude that the sanction must include public censure, which is accomplished by publication of this opinion, in the same manner as an opinion of this Court sitting as the Law Court. We also conclude that it is appropriate to impose a disciplinary suspension from judicial office for one year. We understand that the suspension of the only probate judge in Hancock County imposes a hardship on the people of that county as well as other probate courts. A partially suspended suspension would ameliorate that harm and provide a means of monitoring Judge Blaisdell's conduct. For those reasons, we suspend all but four months of the one-year suspension, provided that Judge Blaisdell complies with the conditions imposed in his bar disciplinary matter. Finally, to emphasize the gravity of the misconduct, we order him to forfeit the amount of $10,000 from the salary otherwise payable to him. This amount represents the equivalent of four months of Judge Blaisdell's judicial salary for the period during which he will be fully suspended from his judicial office.

The entry is:

> It is ORDERED that Hancock County Probate Judge William B. Blaisdell IV be, and hereby is,

censured by the publication of this opinion.  It is further ORDERED that Judge Blaisdell be suspended from his judicial office for a term of one year, commencing on the date this opinion is certified, with all but four months of the suspension suspended, provided that he comply with all the conditions set forth in paragraphs 1 through 24 of the Order of August 16, 2024 in *Board of Overseers of the Bar v. Blaisdell*, BAR-24-07, as if fully set forth herein, which are independently adopted as part of this order of judicial discipline.  It is further ORDERED that Judge Blaisdell forfeit the amount of $10,000 from the judicial salary otherwise payable to him, on or before January 2, 2025.

---

John A. McArdle III, Esq. (orally), Committee on Judicial Conduct, Augusta, for Committee on Judicial Conduct

William B. Blaisdell IV, Esq. (orally), pro se