**In re Bill R. LOWERY, Justice of the Peace Precinct 2, Place 2 Irving, Dallas County, Texas, Respondent.**

No. 71.

Review Tribunal,
Appointed by
Supreme Court of Texas

Feb. 13, 1998.

Robert Flowers, Exec. Dir., Kathy Beer, Deputy Dir., Mary Ellen Keith, John Mason, Robert Johnson, State Commission on Judicial Conduct, Austin, for Commission.

Robert T. Baskett, Dallas, Joe Putnam, Irving, for Judge Lowery.

Before: McCLURE, Presiding Justice, DICKENSON, JONES, VANCE, HADDEN, and ROSS, JJ.

*OPINION*

Presiding Justice ANN CRAWFORD McCLURE delivered the opinion of the Review Tribunal in which Justices DONALD ROSS, BOB DICKENSON, WOODIE JONES, BILL VANCE, and ROBY HADDEN join.

Judge Bill R. Lowery, Justice of the Peace, Precinct 2, Place 2, Irving, Dallas County, Texas, petitions the Review Tribunal[1] to reject the recommendation of the State Commission on Judicial Conduct for his removal and prohibition from holding judicial office in the future.

**PROCEDURAL HISTORY**

On April 3, 1997, Respondent was served with a Notice of Formal Proceedings. The Supreme Court appointed the Honorable F.B. (Bob) McGregor, Jr., Judge of the 66th District Court of Hill County, as Special Master on June 5, 1997, to hear evidence on the charges and to report to the Commission. A formal hearing on the merits was held before the Special Master on July 15–16, 1997, at the George Allen Courts Building, Dallas, Texas.

On September 8, 1997, the Special Master filed his report with the Commission in which he concluded that a preponderance of the evidence showed Respondent to have engaged in judicial misconduct. Specifically, he concluded that Respondent engaged in willful or persistent conduct that is clearly inconsistent with the proper performance of his duties, in violation of TEX. CONST. art. V, § 1–a(6)(A) (1993), and that

1. The Review Tribunal is composed of Justice Ann Crawford McClure, Eighth District Court of Appeals, El Paso, designated Presiding Justice; Justice Donald Ross, Sixth District Court of Appeals, Texarkana; Justice Bob Dickenson, Eleventh District Court of Appeals, Eastland; Justice Woodie Jones, Third District Court of Appeals, Austin; Justice Don Burgess, Ninth District Court of Appeals, Beaumont; Justice Bill Vance, Tenth District Court of Appeals, Waco; and Justice Roby Hadden, Twelfth District Court of Appeals, Tyler.

Respondent had willfully violated various provisions of the Texas Code of Judicial Conduct. *See* TEX.CODE JUD.CONDUCT, reprinted in TEX.GOV'T CODE ANN., tit. 2, Subt. G, App. B (Vernon 1988).

Respondent filed written objections to the report of the Special Master on September 25, 1997. The Examiner filed a response on October 3, 1997. On October 8, 1997, Respondent filed a motion to present additional evidence which included character references. The same day, the Commission overruled Respondent's objections and adopted and affirmed in their entirety the findings of fact filed by the Special Master. It then recommended that the Supreme Court appoint a Review Tribunal pursuant to TEX. CONST. art. V, § 1–a(8); that Respondent be removed from office by order of the Review Tribunal; and that the Review Tribunal issue an order prohibiting Respondent from holding judicial office in the future.

## FACTUAL SUMMARY

As we have referenced, the State Commission on Judicial Conduct adopted the findings, conclusions and recommendations entered by the Special Master. These findings involve five incidents referred to throughout the record as "Items." The following factual recitation is specifically derived from the formal findings of the Special Master.

### *Item 1:*

### *The Grupe Incident*

During May and June of 1995, Paul Fredrick Grupe and Marian Dana Grupe were litigants in a divorce proceeding in the 255th District Court of Dallas County, Texas. No court action involving Paul or Dana Grupe was pending in the Precinct 2, Place 2, Justice Court or Small Claims Court of Respondent. On behalf of Pat Patrick, the step-father of Mrs. Grupe, Respondent telephoned Mr. Grupe and told him that he needed to come to Respondent's office at the Justice Court by noon the following day to transfer the title of a vehicle to Mrs. Grupe. Mr. Grupe advised Respondent that a divorce was pending, that the community property had not yet been divided by the court, and that he needed to check with his attorney. Respondent asked Mr. Grupe if he knew what a Constable's car looked like, causing Mr. Grupe to believe he might be arrested if he failed to comply.

Mr. Grupe called his divorce attorney, Lisa McKnight, who in turn contacted Respondent. McKnight asked him the purpose of his instructions to her client. Respondent told McKnight that Mrs. Grupe's father had bought the vehicle for her and that Mr. Grupe needed to come to Respondent's court to transfer title to that vehicle to Mrs. Grupe by noon the next day. Respondent admitted he had no authority to order Mr. Grupe to appear, but left every impression that he would secure that authority. Respondent's language and intonation toward Mr. Grupe and McKnight, both members of the public, were perceived by them as threatening and intimidating. The Special Master specifically found that Respondent's actions in telephoning Mr. Grupe, his statements to McKnight, and his use of profane and rude language [including his references to arrest] constituted willful conduct.

### *Item 2:*

### *The Judge Forman Incident*

On February 16, 1996, the Commission imposed sanctions on Respondent for his actions in the Grupe incident, directed Respondent to complete eight hours of judicial training,[2] and directed him to contact

2. Pursuant to the provisions of TEX.GOV'T CODE ANN. § 56.006 (Vernon Pamph.1998), the Texas Court of Criminal Appeals promulgated the RULES OF JUDICIAL EDUCATION. Rule 3a provides that each justice of the peace will, as an official duty, complete within one year of taking office, a forty hour course of instruction in the performance of the duties of office; and each year thereafter, complete a twenty hour course of instruction. Rule 3c provides that

Roger Rountree, Director of the Justice Court Training Center, no later than March 15, 1996 in order to have a mentor judge appointed. The Commission expressed its desire that the instruction be completed within ninety days of the date Respondent contacted Rountree. The Commission further requested that Respondent notify the Commission in writing upon his completion of the training.

On April 11, 1996, Respondent was informed by Rountree that Judge Robert A. Forman had been appointed as his mentor judge. At Respondent's request, he was granted an extension for completion of the training to July 31, 1996. By letter dated November 15, 1996, Respondent was informed by the Commission that it had no record of his completing the training and that his failure to complete the ordered education was set to be reviewed by the Commission during its regularly scheduled December meeting. The Commission requested that Respondent provide no later than November 30, 1996 the date of completion or the reasons for failure to accomplish the training. During the week of November 25, Respondent contacted Judge Forman about the judicial education and learned that Judge Forman could not meet with him before the Commission's December meeting. Respondent then requested that Judge Forman report to the Commission that the training had been completed, even though this was untrue. Judge Forman refused to do so. Respondent failed to obtain the eight hours of additional education by the Commission's meeting on December 13, 1996; nor had he completed the training by the meeting of February 13–14, 1997, nearly one year after the original sanctions were imposed. His failure to comply with the Commission's order of February 16, 1996 requiring him to receive eight hours of additional judicial education was found by the Special Master to constitute willful conduct.

The Special Master made the following specific findings regarding the solicitation of the false report:

> As to Item 2, Number 7, the Special Master finds that during the week of November 25, 1996, [Respondent] did in fact, contact Judge Robert A. Foreman [sic] regarding his need to complete the needed hours of judicial education. When [Respondent] was informed that Judge Foreman [sic] would not be able to meet with [Respondent] to complete the order for additional education before the Commission's meeting in December, [Respondent] asked Judge Foreman [sic] 'well, why don't you fudge it—why can't we fudge on it,' that Judge Foreman [sic] asked [Respondent] what he meant by 'fudging' and the clear understanding of both men was that what was meant would be to advise the Commission that the work had been completed, when it had not, and that Judge Foreman [sic] responded 'I think you've misjudged me considerably, that I would not do that.' Judge Foreman [sic] did, in fact, refuse to inform the Commission that the 8 hours of education had been completed. Therefore, based on a preponderance of the evidence, the Special Master finds that [Respondent] willfully asked a fellow Justice of the Peace to submit a false report to the Commission. That portion of this Number is found to be TRUE. This being a civil proceeding, the Special Master will not make a finding of a violation of a criminal statute as requested to be found in terms of violation of Article 37.10 of the Penal Code, tampering with a governmental record. However, the Special Master does find that [Respondent] willfully made the request of Judge Foreman [sic] to submit a false report to the Commission.

only those courses of instruction completed through a continuing education program approved by the Justice Court Education Committee can be utilized to satisfy the requirements of Rule 3a. The eight hours of judicial training imposed on Respondent by the Commission were to be completed in addition to the basic continuing judicial education requirements.

*Item 3:*

***The Parking Attendant Incident***

On May 3, 1996, Respondent parked his vehicle in the parking lot west of the Dallas County Administration Building at 411 Elm Street, Dallas, Texas. The parking lot was managed by the Dallas County Historical Foundation, doing business as the Sixth Floor Museum. Respondent was approached by Aaron Thomas, the parking attendant, who informed Respondent that there was a $3.00 fee for parking in the lot. Respondent refused to pay, displayed an identification badge, and stated that he was a judge and that he had not paid a parking fee in the past. Thomas informed Respondent that the parking lot was under new management and that Respondent would no longer be entitled to free parking. Respondent replied that he would move his car to the county employee reserve parking space, which Thomas advised him could result in his car being towed by the county. Noting that Thomas was of African-American descent, the Special Master found by a preponderance of the evidence that when Thomas asked Respondent his name, Respondent answered by stating, "Can't you read, black motherf—er?" or "Nigger, can't you f—ing read?" Respondent and Thomas then proceeded to the administrative offices of the museum, where Respondent admitted referring to Thomas as a "nigger." Pedro Gonzalez, a security guard, was contacted. This incident was reported in *The Dallas Morning News* on May 4, 1996. Respondent subsequently apologized to Thomas, but he denied using any racial slurs. Nevertheless, the Special Master found that Respondent had admitted using the word "nigger" and that this word was believed to be a racial slur in the context in which it was used. The Special Master also specifically found:

- Respondent's use of the word "nigger" during a dispute with the parking attendant constituted willful conduct.
- The words "black mother-f—er" were used, although they may been inverted.
- Respondent's language was abusive, indecent, profane or vulgar; it was used in a public place; and by its very utterance tended to incite an immediate breach of the peace.
- Respondent's words were heard by members of the public; the words were offensive and shocking to members of the public; and the words were published willfully by Respondent.

*Item 4:*

***The Repair Shop Incident***

On June 13, 1996, Danny Johnston filed suit in the Justice of the Peace, Precinct 2, Place 2, Small Claims Court against Sam Naser and Best Japanese Motors & Parts, Inc. to recover $1,484.33 which he had paid for a new engine he claimed was defective. On September 5, 1996, a trial was held before Respondent who ruled that the defendant must replace the engine with a used engine within thirty days.

During the latter part of October, Johnston inquired of Respondent how he might enforce the order that Naser repair the vehicle. Respondent called Best Japanese Motors, asked if Naser were in, and wanted to "go down and see why he did not follow my court order in repairing Mr. Johnston's car." Respondent admits that he advised Naser that "his response to my question was not good enough and that he had to repair and return Mr. Johnston's car the same day ." Respondent did in fact go to Best Japanese Motors and, outside his courtroom, placed both Johnston and Naser under oath. In lengthy findings, the Special Master found:

> Respondent asked Mr. Naser about [Johnston's] vehicle and Naser stated he was still looking for an engine. [Respondent] then ordered Naser to write Johnston a check for $2,000.00 although the Judge alleges that that was not 'a contempt fine.' According to the civil docket on September 5, 1996, [Respondent] 'ruled that Defendant must replace

engine with a used engine within 30 days.' Such order was, in fact, for specific performance. After said judgment was rendered, the hearing at Best Japanese Motors and Parts was conducted on October 29, 1996, fifty-four days after judgment of September 5, 1996. [Respondent] denied that he told Mr. Naser not to get 'god-damned smart' with [Respondent]. The Special Master notes that in response to complaint of Sam Naser filed as Examiner's Exhibit 1 Response Number 4, that he [Respondent] did find Mr. Naser in 'contempt' and fined him $2,000.00 for his non-compliance with the judge's prior court order and that he did tell Mr. Naser that his failure to comply with his orders could result in a contempt penalty of jail time at the Lou Starrett Justice Center, Dallas County. The Judge further over his signature in said Exhibit 1 suggested that Mr. Naser call a tow truck to have Mr. Johnston's vehicle towed to another facility as Mr. Naser had not complied with [Respondent's] prior orders. He informed Mr. Naser that he could appeal the judgments and orders within five days. *[Respondent's] testimony at hearing and his written statements and response to complainant Sam Naser are at such variance as to challenge the credibility of [Respondent]* at that point, and the Special Master finds that allegations of Item 4, Number 9 to be TRUE. [Emphasis added].

The Special Master further found that Respondent's actions on behalf of Johnston, his actions in telephoning Naser, and his actions in going to the repair shop regarding Naser's alleged failure to repair Johnston's vehicle constituted willful conduct. Additional findings were made concerning Respondent's taking action "after his Court apparently no longer had jurisdiction."

### *Item 5:*

### *Persistent Conduct*

Item 5 of the original Notice of Formal Proceedings charged that Respondent's use of profane and rude language toward Paul Grupe, Aaron Thomas, Pedro Gonzalez, and Sam Naser constituted persistent conduct. The Special Master found no rude or profane language toward Naser, but the allegations as to Grupe, Thomas, and Gonzalez were found to be true.

## JUDICIAL DISCIPLINE

Our system of checks and balances between the three branches of government must be scrupulously guarded. "The complete independence of the courts of justice is peculiarly essential in a limited constitution." Alexander Hamilton. *The Federalist* No. 78, at 2:292 (1788). An independent and vigorous judiciary is essential as a bulwark to protect the rights of our citizens. *In re Ross,* 428 A.2d 858, 861 (Me.1981). Yet independence of the judiciary is not inconsistent with accountability for judicial conduct; the lack of judicial accountability may in and of itself be the greatest danger to judicial independence. *In re Ross,* 428 A.2d at 861.

Clearly, our scheme of judicial accountability arises in part from a justifiable concern for the relationship between judicial conduct and public perception. Art. V, § 1–a(6)A of the Texas Constitution imposes sanctions for conduct that casts public discredit upon the judiciary or the administration of justice; Canon 2 A of the Code of Judicial Conduct requires that a judge act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. While the legal profession has historically been considered a noble one, modern-day portrayals paint a picture of scorn and ridicule. In the courtroom called the media, in the trial by public perception, the image of the judicial system is at an all-time low.

The egregious circumstances of this case paint a bleaker picture still. Thus, we are charged with determining whether the conduct of a particular judge so violates the minimum standards of propriety set forth in the Texas Constitution and the

Texas Code of Judicial Conduct as to require not only his removal from office, but also a prohibition against his seeking judicial office in the future.

## BURDEN OF PROOF BEFORE SPECIAL MASTER

Judicial disciplinary proceedings are not considered criminal proceedings. The function of the State Commission on Judicial Conduct is not to punish; instead, its purpose is to maintain the honor and dignity of the judiciary and to uphold the administration of justice for the benefit of the citizens of Texas. *In re Thoma,* 873 S.W.2d 477, 484–85 (Tex.Rev.Trib.1994), *citing In re Brown,* 512 S.W.2d 317, 319 (Tex.1974); *In re Laughlin,* 153 Tex. 183, 265 S.W.2d 805 (1954); *McDaniel v. State,* 9 S.W.2d 478 (Tex.Civ.App.—Texarkana 1928, writ ref'd); *In re Coruzzi,* 95 N.J. 557, 472 A.2d 546 (1984)., *appeal dismissed,* 469 U.S. 802, 105 S.Ct. 56, 83 L.Ed.2d 8 (1984); *In re Diener,* 268 Md. 659, 304 A.2d 587 (1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974); *Sharpe v. State,* 448 P.2d 301 (Okla.Jud.Ct.1968), *cert. denied,* 394 U.S. 904, 89 S.Ct. 1011, 22 L.Ed.2d 216 (1969). The burden fell upon the Examiner for the Commission to establish the allegations against Respondent by a preponderance of the evidence. *In re Brown,* 512 S.W.2d at 319–20; *see also In re King,* 409 Mass. 590, 568 N.E.2d 588 (1991); *In re Littleton,* 719 S.W.2d 772, 775 (Mo.1986); *In re Lowther,* 611 S.W.2d 1, 2 (Mo.1981); *Geiler v. Comm'n on Judicial Qualifications,* 10 Cal.3d 270, 110 Cal.Rptr. 201, 515 P.2d 1 (1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974).

## STANDARD OF REVIEW

On May 21, 1992, the Supreme Court promulgated the TEXAS RULES FOR REMOVAL OR RETIREMENT OF JUDGES. TEX. R.REM'L/RET. JUDGES, 56 TEX.B.J. 823 (1993). Pursuant to these rules, the procedures established for the initial adjudication of the instant cause, *i.e.*, formal proceedings before a special master or the Commission, are to be conducted as nearly as practicable in accordance with established rules of civil procedure. TEX. R.REM'L/RET. JUDGES, Rule 10(d). Moreover, during the course of any hearing conducted in the furtherance of formal proceedings, whether before a special master or the Commission, only legal evidence is to be received. *Id.,* Rule 10(e). Absent a statement of objections to the report of the special master, the Commission may adopt the findings of the special master as its own. *Id.,* Rule 10(j). Consequently, we treat the findings of the Special Master, as adopted by the Commission, as findings of fact filed by a trial judge in a bench trial which we review for legal and factual sufficiency of the evidence to support them. In so doing, we employ the same standards to be applied in reviewing the legal and factual sufficiency of the evidence supporting findings in a civil case, either by a trial court or by a jury. *In re Thoma,* 873 S.W.2d at 485, *Cullen Ctr. Bank & Trust v. Texas Commerce Bank, N.A.,* 841 S.W.2d 116, 121 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Green Tree Acceptance, Inc. v. Holmes,* 803 S.W.2d 458, 461 (Tex.App.—Fort Worth 1991, writ denied); *First Nat'l Bank v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.).

A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See generally In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Hedley Feedlot, Inc. v. Weatherly Trust,* 855 S.W.2d 826, 836 (Tex. App.—Amarillo 1993, writ denied); *Davis v. McQueen,* 842 S.W.2d 376, 385 (Tex. App.—Beaumont 1992, writ denied). As in civil appeals, this Review Tribunal cannot substitute its findings for those of the Commission. If there is sufficient competent evidence of probative force to support

the findings and recommendation, they must be sustained. *See Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied). It is not within the province of this Tribunal to interfere with the Commission's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *See Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951). Where there is conflicting evidence, the findings of the Commission on such matters will be regarded as conclusive. *See Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947); *Oechsner,* 840 S.W.2d at 136.

In considering a "no evidence" legal insufficiency point, we consider only the evidence that tends to support the Commission's findings and disregard all evidence and inferences to the contrary. *See Garza v. Alviar,* 395 S.W.2d 821 (Tex. 1965). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *Worsham Steel Co. v. Arias,* 831 S.W.2d 81 (Tex. App.—El Paso 1992, no writ).

## PROCEDURAL OBJECTIONS

### *Denial of Trial by Jury Constitutional Provisions*

In his first two points of error, Respondent contends that the proceedings against him should have been conducted pursuant to art. V § 24 instead of art. V, § 1–a of the Texas Constitution. He argues that because § 24 specifically includes justices of the peace, it is a more specific provision, taking precedence over the more general provisions of § 1–a. As a result, he complains that the proceedings were fatally flawed because he was denied the right to a trial by jury. We disagree. We begin by setting forth the precise language of each provision.

*Tex. Const. art. V, § 24*

Sec. 24. County Judges, county attorneys, clerks of the District and County Courts, *justices of the peace,* constables, and other county officers, may be removed by the Judges of the District Courts for incompetency, official misconduct, habitual drunkenness, or other causes defined by law, upon the cause therefor being set forth in writing and the finding of its truth by a jury. [Emphasis added].

*Tex. Const. art. V, § 1–a*

Subsection (2) of § 1–a creates the State Commission on Judicial Conduct, formerly the State Judicial Qualifications Commission. Subsection (6)A then provides:

(6)A. Any Justice or Judge of the courts established by this Constitution or created by the Legislature as provided in Section 1, Article V of this Constitution, may, subject to the other provisions hereof, be removed from office for willful or persistent violation of rules promulgated by the Supreme Court of Texas, incompetence in performing the duties of the office, willful violation of the Code of Judicial Conduct, or willful or persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice. Any person holding such office may be disciplined or censured, in lieu of removal from office, as provided by this section.

### *Concurrent Remedies*

Although the Constitution provides multiple methods for the removal of a judge, none is an exclusive remedy and more than one may be pursued concurrently. *In the Matter of Carrillo,* 542 S.W.2d 105, 108 (Tex.1976). In the instant matter, the proceedings to remove Respondent were conducted under art. V, § 1–a. Subsection 13 specifically provides that § 1–a is an alternative to, and cumulative of, the methods of removal of persons holding an office named in Paragraph A of

Subsection 6. In turn, Paragraph A of Subsection 6 authorizes the removal of any justice or judge of the courts established in art. V, § 1. This latter provision clearly encompasses justices of the peace:

> Sec. 1. The judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, *in Courts of Justices of the Peace,* and in such other courts as may be provided by law. [Emphasis added].

Art. V, § 1–a does not provide for jury trials. Instead, it authorizes the Commission to request that the Supreme Court appoint a master to hear and take evidence and to report to the Commission. If, after considering the record and report of a master, the Commission finds good cause therefor, it shall issue an order of public censure or it shall recommend to a review tribunal the removal or retirement of the person in question. TEX. CONST. art. V, § 1–a(8). We conclude that these proceedings were properly brought pursuant to art. V, § 1–a.

### *Appointment of Special Master*

Respondent next contends in Point of Error III that the Special Master was not properly appointed. Pursuant to its own procedural rules, the Supreme Court *shall* appoint a special master within ten days of its receipt of the request by the Commission. TEX.R.REM'L/RET. JUDGES, Rule 10(c)(2).

By letter dated May 19, 1997, the Commission requested that the Supreme Court appoint a special master in the instant case. Judge McGregor was appointed as Special Master by order dated June 5, 1997. There is no dispute that the request was not formally file-stamped, nor is there any evidence in the record as to when the request was actually received by the Supreme Court. Counsel for Respondent argues that absent evidence to the contrary, the Supreme Court should be deemed to have received the request on the date that he received it, that being May 22, and that because fourteen days elapsed between the request for and the date of appointment, the proceedings below should never have occurred. He stops short of suggesting that the untimely appointment deprived the Special Master or this Review Tribunal of jurisdiction to consider the charges against Respondent. We broadly interpret Respondent's complaint to be that strict compliance must be demonstrated because of mandatory rather than directory language in the procedural rules.

There is neither a constitutional nor statutory requirement concerning the time parameters for appointing the special master. Instead, the Supreme Court has promulgated procedural rules to facilitate judicial discipline and to expedite formal proceedings. These rules serve to protect the judge, the public, and the spirit which underscores our scheme of the administration of justice. Neither the judge nor the public stands to benefit from undue delay.

We note that the Supreme Court has often applied a rule of statutory interpretation in situations substantially identical to the one here:

> There is no absolute test by which it may be determined whether a statutory provision is mandatory or directory. The fundamental rule is to ascertain and give effect to the legislative intent. Although the word 'shall' is generally construed to be mandatory, it may be and frequently is held to be merely directory. In determining whether the Legislature intended the particular provision to be mandatory or merely directory, consideration should be given to the entire act, its nature and object, and the consequences that would follow from each construction. *Provisions which are not of the essence of the thing to be done, but which are included for the purpose of promoting the proper, orderly and prompt conduct of business, are not generally regarded as mandatory. If the statute directs, authorizes or commands an act to be done within a cer-*

*tain time, the absence of words restraining the doing thereof afterwards or stating the consequences of failure to act within the time specified, may be considered as a circumstance tending to support a directory construction.* [Emphasis added].

*Schepps v. Presbyterian Hospital of Dallas,* 652 S.W.2d 934, 936 (Tex.1983) (quoting *Chisholm v. Bewley Mills,* 155 Tex. 400, 287 S.W.2d 943, 945 (Tex.1956)).

Our analysis would stop here but for the fact that Rule 1(k) defines "shall" as "mandatory" and "may" as "permissive." TEX. R.REM'L/RET. JUDGES, Rule 1(k). It thus appears to us that the Supreme Court has chosen to apply a mandatory construction to the timetable for the appointment of the Special Master. In the instant cause, the Supreme Court failed to comply with its mandate and further failed to implement a filing policy that would enable a party to removal proceedings to ascertain the precise date on which the timetable commenced. While we cannot precisely determine that the Supreme Court received the request on May 22, 1997, we do believe it reasonable to presume that the request was received more than ten days prior to the appointment of the Special Master. Accordingly, the Special Master was improperly appointed. TEX.R.REM'L/RET. JUDGES, Rule 10(c)(2).

Once again, however, our analysis cannot end here. Rule 10(d)(1) provides that the special master "shall proceed with the hearing as nearly as may be according to the rules of procedure governing the trial of civil causes in this state, subject to the provisions of Rule 5" [governing the issuance, service, and return of subpoenas]. TEX.R.REM'L/RET. JUDGES, Rule 10(d)(1). *See In re Thoma,* 873 S.W.2d at 485. We are also directed to the TEXAS RULES OF APPELLATE PROCEDURE with regard to the form and content of briefs, and the procedures for oral argument. TEX. R.REM'L/RET. JUDGES, Rule 12(e) and (g). We construe these rules to require our reliance upon both bodies of procedural rules except to the extent that language in the RULES FOR REMOVAL OR RETIREMENT OF JUDGES requires a different result. Accordingly, we conclude that the harmless error rule applies. *In re Thoma,* 873 S.W.2d at 488, 513. TEX.R.APP.P. Rule 44.1 [3] provides that "[n]o judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals." The obvious purpose of this rule traces back to its predecessors and was enunciated by the Supreme Court as abolishing the former rule of presumed prejudice whereby the prevailing party had the burden of proving that the complaining party was not prejudiced by the error. *Lorusso v. Members Mut. Ins. Co.,* 603 S.W.2d 818 (Tex.1980), *citing* Calbert and Perin, *Is the Castle Crumbling? Harmless Error Revisited,* 20 S.TEX.L.J., 1 (1979); Calvert, *The Development of the Doctrine of Harmless Error in Texas,* 31 TEX.L .REV. 1 (1952). "The rule recognizes that a litigant is not entitled to a perfect trial for, indeed, few trials are perfect. In recognition of this fact, the harmless error rule establishes a sound and common sense policy of not reversing a judgment unless the error or errors can be said to have contributed in a substantial way to bring about the adverse judgment." *Lorusso,* 603 S.W.2d at 819–20.

Respondent has not established that he suffered any harm by the four-day delay in the appointment of the Special Master. In fact, Respondent was granted a continuance from the original hearing

3. The Texas Rules of Appellate Procedure were amended effective September 1, 1997 and apply fully to any appeal perfected on or after that date and any proceeding initiated in an appellate court on or after that date. Because the proceedings before this Review Tribunal were initiated in October 1997, we apply the amended rules.

date due to the confusion surrounding the appointment. Therefore, we conclude that while error, the untimely appointment of the Special Master was harmless.

### *Consideration of Allegations in Item 1*

The issues contained in Item 1 (The Grupe Incident) of the Notice of Formal Proceedings are the same issues that were the basis of the sanctions imposed against Respondent in February, 1996 arising from informal proceedings. In Point of Error IV, Respondent argues that the sanction was imposed pursuant to a final order and that the issues may not be revisited by the Commission. We agree. We turn first, however, to a discussion of the distinctions between informal and formal proceedings.[4]

### *Informal Proceedings*

The Commission may institute a preliminary investigation upon an allegation or appearance of misconduct or disability of any judge. The purpose of the preliminary investigation is to determine whether the allegation is unfounded or frivolous. If the Commission determines that the allegation is unfounded or frivolous, it shall terminate the proceedings. TEX. R.REM'L/RET. JUDGES, Rule 3. If the preliminary investigation reveals that the allegations are neither unfounded nor frivolous, or if sufficient cause exists to warrant a full inquiry into the facts and circumstances indicating that a judge may be guilty of willful or persistent conduct which is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or the administration of justice, or that he has a disability seriously interfering with the performance of his duties which is or is likely to become permanent in nature, the Commission shall conduct a full investigation. TEX.R.REM'L/RET. JUDGES, Rule 4. The Commission may offer a judge the opportunity to appear informally before the Commission. No oral testimony other than the judge's shall be received during an informal appearance, although documentary evidence may be tendered. TEX. R.REM'L/RET. JUDGES, Rule 6. The Commission may then impose sanctions upon a judge including a private or public admonition, warning, reprimand, or a requirement that the judge obtain additional training or education. TEX. CONST. art. V, § 1–a(8). A judge who has been sanctioned by the Commission may request the appointment of a special court of review, a panel of three court of appeals justices. TEX. R.REM'L/RET. JUDGES, Rules 1(g) and 9(a). The special court of review may dismiss or affirm the Commission's decision, impose a greater or lesser sanction, or order the Commission to file formal proceedings. TEX.R.REM'L/RET. JUDGES, Rule 9(d). Respondent here did not elect to have his original sanction of additional judicial education considered by a special court of review.

### *Formal Proceedings*

If the Commission determines that the situation so merits, it may institute formal proceedings and order a formal hearing to be held concerning public censure, removal or retirement of a judge. It may elect to conduct the hearing or it may in its discretion request that the Supreme Court appoint a special master to hear and take evidence and report to the Commission. TEX. CONST. art. V, § 1–a(8); TEX. R.REM'L/RET. JUDGES, Rule 10(c)(1), (e) and (h)(1). If no objection to the report of the special master is timely filed, the Commission may adopt it without a hearing. If, however, an objection is filed, the Commission shall give the judge the opportunity to be heard before the Commission. TEX. R.REM'L/RET. JUDGES, Rule 10(j). After hearing, the Commission may dismiss the case or publicly order a censure, reprimand, warning, or admonition. Upon an affirmative vote of six members, the Com-

4. For a detailed discussion of the operations and procedures of the Commission, see *Annual Report: State Commission on Judicial Conduct,* 61 TEX.B.J. 132 (1998).

mission shall recommend the removal or retirement of the judge. TEX.R.REM'L/RET. JUDGES, Rule 10(m). The recommendation shall then be subject to the consideration of a review tribunal, which shall order public censure, retirement, or removal, as it finds just and proper, or wholly reject the recommendation. TEX.R.REM'L/RET. JUDGES, Rule 12(a) and (h). The judge may then appeal the decision of the review tribunal to the Supreme Court. TEX. R.REM'L/RET. JUDGES, Rule 13.

### *Finality of Sanction*

We conclude that the original sanction imposed against Respondent became final when no special court of review was sought. To allow the Commission to revisit the issue after sanctions have been imposed would be tantamount to an enhanced penalty for the same judicial offense. While we recognize that these proceedings are not criminal in nature implicating double jeopardy, nor even quasi-criminal implicating contempt limitations, we nevertheless are bound by the constitutional mandate that due process of law be afforded any judge against whom a removal proceeding is brought. TEX. CONST. art. V, § 1–a(11). Therefore, this Review Tribunal will not consider Respondent's underlying actions in the Grupe incident.

We are cautious to add, however, that our conclusion does not prohibit our consideration of the fact that a prior incident of misconduct occurred. Furthermore, Respondent's failure to abide by the Commission's order to complete additional judicial education and the more egregious conduct in asking his mentor judge to submit a false report to the Commission are appropriate issues for consideration, and were properly included in the Notice of Formal Proceedings as Item 2. The fact that a judge has been afforded a lesser sanction, and declined to take the opportunity to comply with the sanction to demonstrate his rehabilitation, may indicate that a greater sanction is required with regard to subsequent judicial offenses.

Despite our determination that the underlying merits of the Grupe incident should not be considered in the Special Master's conclusion that Respondent has engaged in willful or persistent conduct that is clearly inconsistent with the proper performance of his duties, in violation of TEX. CONST. art. V, § 1–a(6)(A), and that Respondent had willfully violated various provisions of the Texas Code of Judicial Conduct, we decline Respondent's request that we remand these proceedings to the Commission.[5] Because we have the discretion to order public censure, retirement, or removal as we find just and proper, or to wholly reject the recommendation of the Commission, a remand is unnecessary. TEX.R.REM'L/RET. JUDGES, Rule 12(h).

### *The Special Master's Failure to Rule on Objections*

Respondent argues in Point of Error V that the Special Master should have ruled on these three objections we have just detailed, rather than deferring the rulings to the Commission. Pursuant to TEX. CONST. art. V, § 1–a(8), the master is appointed to hear and take evidence in the matter and report thereon to the Commission. The master "shall have all the power of a District Judge in the enforcement of orders pertaining to witnesses, evidence, and procedure." The Special Master had no authority to rule on objections which would effectively dismiss the entire case or a portion of the case. The authority to dismiss the case or, alternatively, to remove or retire Respondent, lies solely with the Review Tribunal. TEX.R.REM'L/RET. JUDGES, Rule 12(h). Therefore, we overrule Point of Error V.

## CHALLENGES OF "VAGUE AND OVERBROAD"

In Points of Error VI and VII, Respondent contends that the following

5. Respondent argues that the Commission may have voted for a lesser sanction had the Grupe incident not been included for consideration of willful or persistent conduct.

provisions of the Texas Constitution and the Texas Code of Judicial Conduct are impermissibly vague, both facially and as applied here:

- Article V, § 1–a(6)(A) of the Texas Constitution, providing in pertinent part that a judge may be disciplined, censured, or removed from office "for willful or persistent violation of rules promulgated by the Supreme Court of Texas, incompetence in performing the duties of the office, willful violation of the Code of Judicial Conduct, or willful or persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice."
- Canon 2 A of the Texas Code of Judicial Conduct—"A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."
- Canon 2 B of the Texas Code of Judicial Conduct—"A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others."
- Canon 3 B(2) of the Texas Code of Judicial Conduct—"A judge should be faithful to the law and shall maintain professional competence in it."
- Canon 3 B(4) of the Texas Code of Judicial Conduct—"A judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity."
- Canon 4 A(1) of the Texas Code of Judicial Conduct—"A judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge."

While vagueness and overbreadth doctrines are generally used to challenge the validity of laws defining criminal conduct, the prohibitions against vagueness and overbreadth also extend to regulations affecting conditions of government employment. *In the Matter of Seraphim,* 97 Wis.2d 485, 294 N.W.2d 485, 492 (1980). It appears from the cases which have addressed the question of unconstitutional vagueness in this context that a greater degree of flexibility is permitted with respect to judicial discipline than is allowed in criminal statutes. *In the Matter of Seraphim,* 294 N.W.2d at 492. The constitutionality of necessarily broad standards of professional conduct has long been recognized. *Id.* at 493, *citing In re Gillard,* 271 N.W.2d 785, 809 (Minn.1978).

A statute may be successfully challenged as vague if it does not clearly define the conduct regulated, and thus does not afford an individual fair warning of what conduct is prohibited. *Halleck v. Berliner,* 427 F.Supp. 1225, 1240 (D.D.C. 1977). Moreover, a statute which clearly defines the conduct regulated may be unconstitutionally overbroad if it includes protected conduct within its prohibitions. *Id.* A statute is not necessarily invalid as vague or overbroad merely because it is difficult to determine whether marginal conduct falls within the statutory language. *Id.*

Arguments in other jurisdictions that constitutional and statutory provisions for the discipline of judges were vague or overbroad have been rejected on the ground that the Code of Judicial Conduct furnished sufficient specification of the judicial conduct which warrants disciplinary action. *Id* Statutes and constitutional provisions which define in similarly broad terms the grounds for removal of judges from office have been upheld in *Napolitano v. Ward,* 317 F.Supp. 79 (N.D.Ill.1970) ("for cause"); *Keiser v. Bell,* 332 F.Supp. 608 (E.D.Pa.1971) ("misconduct in office"); *Halleck v. Berliner,* 427 F.Supp. 1225 (D.D.C.1977) ("conduct which is prejudicial to the administration of justice or which brings the judicial office into disrepute"); *In re Nowell,* 293 N.C. 235, 237 S.E.2d 246 (1977) ("wilful misconduct in office" and

"conduct prejudicial to the administration of justice that brings the judicial office into disrepute"); *Nicholson v. Judicial Retirement and Removal Comm.*, 562 S.W.2d 306 (Ky.1978) ("for good cause"); and *In re Gillard*, 271 N.W.2d 785 (Minn.1978) (persistent failure to perform duties, habitual intemperance or conduct prejudicial to the administration of justice).

In light of these decisions, we find no merit in Respondent's contention that the standards he was found to have violated are unconstitutionally vague. While the Canons challenged in this matter may proscribe some speech and conduct which, for other persons in other circumstances, could not be constitutionally proscribed, Respondent's contention that they are unconstitutionally overbroad must be rejected. It is well established that judges, in company with other public servants, must suffer from time to time such limits on these rights as are appropriate to the exercise in given situations of their official duties or functions. *In the Matter of Seraphim,* 294 N.W.2d at 494. The limitations imposed by the rules are made necessary by the very nature of the task which a judge seeks to perform. *Id.* As such, they are not improper.

## SUFFICIENCY OF THE EVIDENCE

In Points of Error VIII through XIII, Respondent complains of the insufficiency of the evidence to support the findings of the Special Master and the findings, conclusions and recommendation of the Commission with regard to the five items charged.

### *Item 1:*

### *The Grupe Incident*

Inasmuch as we have determined that we cannot revisit the underlying factual allegations contained in Item 1, we need not address the sufficiency of the evidence to support the findings and conclusions with regard thereto.

### *Item 2:*

### *The Judge Forman Incident*

Respondent argues that the Commission did not impose a deadline on the completion of the eight hours of additional judicial education and, therefore, that there is no evidence that Respondent willfully failed to comply with an enforceable Commission order.

Since we have found that we cannot revisit the allegations in Item 1 because of the prior final sanctions order, it necessarily follows that the order was enforceable. As the Special Master found:

> [T]here is some confusion with regard to the original date of required completion of the eight hours of education, because to set said date, one would have to know the exact date of [Respondent's] first contact with Mr. Rountree.... It is obvious, however, that [Respondent], by letter dated June 10, 1996 thought he was very close to being near the end of the allotted 90 days, and regardless of the deadline, judicially confessed and admitted that he did not complete the 8 hour instruction within the 90 day period allotted.

The Commission has the power to sanction pursuant to the provisions of art. V, § 1–a(8) of the Texas Constitution. Sanctions are issued in lieu of the institution of formal proceedings to deter similar misconduct by a judge or judges in the future, to promote the proper administration of justice, and to reassure the public that the judicial system of this state neither permits nor condones misconduct. Tex. R.Rem'l/Ret. Judges, Rule 1(e). The Commission requested that the judicial training be completed within ninety days of the date Respondent contacted Rountree. Respondent was assigned a mentor judge on April 11, 1996 such that the judicial training should have been completed by July 10, 1996. At Respondent's request, he was granted an extension of time for completion of the training to July 31, 1996. Additional extensions were granted and dead-

lines set each time Respondent requested them. Had the Commission failed to put a deadline on the completion of the sanctions, there would have been no need for Respondent to request extensions. While the Special Master found that the original deadline for completion was vague, he also found that the Respondent judicially confessed and admitted that he did not complete the eight hours of instruction within the ninety day period allotted. Respondent's failure to complete the eight hours of training in the year between the date the sanctions were originally imposed [February 16, 1996] and the date of the February 1997 meeting of the Commission [February 13–14, 1997] supports a finding of willful failure to comply.

Respondent further contends that simple failure to complete the judicial education is not related to the performance of his judicial "duties." The sanctions were imposed by the Commission pursuant to art. V, § 1-a(8) of the Texas Constitution. Failure to abide by a prior order of the Commission is, in itself, sanctionable conduct. It was therefore the "duty" of the Respondent as a judicial officer to comply with the order. His non-compliance was "clearly inconsistent with the proper performance" of his duties in violation of art. V, § 1-a(6)A of the Texas Constitution and reflects failure to "comply with the law" in violation of Canon 2 A of the Code of Judicial Conduct.

We are not persuaded by Respondent's argument that the statement made to Judge Forman was a "private, off-hand remark." Respondent admitted that he asked Judge Forman to inform the Commission that the education had been completed when it had not. Requesting that a fellow jurist file a false report with the Commission is an act of dishonesty that evidences willful conduct which does not promote public confidence in the integrity of the judiciary in violation of Canon 2 A of the Code of Judicial Conduct. Indeed, it evidences a *lack* of integrity.

### *Item 3:*

### *The Parking Attendant Incident*

Respondent disputes the sufficiency of the evidence to support a finding that he used racial slurs against Aaron Thomas. Respondent contends that there is not enough "credible" evidence to show that he used the language alleged and he denies doing so. We reiterate that it is not within the province of this Tribunal to interfere with the Commission's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *See Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951). Where there is conflicting evidence, the findings of the Commission on such matters will be regarded as conclusive. *See Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947); *Oechsner*, 840 S.W.2d at 136.

Respondent again claims that he was not acting in a judicial capacity and that the incident was a private argument between two parties. He testified that he had previously parked at no charge in the lot in question due to his status as a judge. The basis of the argument between Respondent and Thomas was Respondent's belief that he held certain privileges because of his status. Had this in fact been a private argument between two parties which did not involve Respondent's judicial position, there would have been no dispute. In that instance, Respondent would not have believed himself entitled to free parking.

We also disagree with his argument that the dispute in question had nothing to do with the judiciary. Canon 2 A provides that a judge should act *at all times* in a manner that promotes public confidence in the integrity and impartiality of the judiciary. The moment Respondent identified himself as a judge and attempted to gain favor through his status as a judge, the judiciary was implicated. Judges who freely use racial or other epithets, on or off the bench, create, at the very least, a public perception that they will not fairly

decide cases involving minorities. "The administration of justice is prejudiced by the public perception of racial bias, whether or not it is translated into the court's judgments and order." *In re Stevens,* 31 Cal.3d 403, 405, 645 P.2d 99, 100, 183 Cal.Rptr. 48, 49 (1982) (Kaus, J., concurring).

Respondent next contends that the majority of his misdeeds were conducted not in his official capacity as a judge, but as a private citizen and should not be sanctionable. The Texas Code of Judicial Conduct does not distinguish between the two. Canon 1 states that a judge should participate in establishing, maintaining, and enforcing high standards of conduct and should personally observe those standards so that the integrity and independence of the judiciary is preserved. Canon 2 states that a judge should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Neither of these Canons limit application of these standards nor suggest that they are to be observed only when the judge is on the bench or acting in some official capacity.

Does the Code of Judicial Conduct intrude into a judge's private life? Most definitely. But that is a path chosen when the decision to seek office is made. A judge must observe the high standards promulgated by the Code of Judicial Conduct both on and off the bench in order to maintain the integrity of the judiciary:

> The ethical standards governing judges' off-the-bench conduct recognize that judges play a unique role in society. Respect for those who serve as judges and for their integrity and independence is essential if the public is to believe that justice is being done in the courts. Restrictions on judges' extra-judicial conduct are necessary to avoid both conduct and relationships that convey the appearance that judges will not be impartial in their judicial functions.

Stern, *Is Judicial Discipline in New York State a Threat to Judicial Independence?,* 7 PACE L.REV. 291, 346 (1987).

Lastly, Respondent observes that he is entitled to free speech pursuant to his first amendment constitutional protections. It has been suggested, however, that "[j]udges do not have full first amendment rights." *Id.* at 363.

> [A] judge's right to free speech may not be as broad as that of other citizens. A judge who uses racist language, even while not acting in an official capacity, reasonably conveys the impression that he or she will not be impartial toward members of the race the judge has demeaned.

*Id.* at 349. Any conduct inconsistent with proper judicial demeanor, whether on or off the bench, subjects the judiciary as a whole to disrespect. *In re Kuehnel,* 49 N.Y.2d 465, 469, 403 N.E.2d 167, 168, 426 N.Y.S.2d 461, 463 (1980). Thus, even off the bench, a judge remains cloaked figuratively with the "black robe of office devolving upon him standards of conduct more stringent than those acceptable for others." *Id.*

Judges have been most frequently disciplined for out-of-court statements when their comments are likely to cause the public to believe that future cases would be decided based on matters unrelated to the merits and when their comments are uttered in a manner likely to cause the public to lose respect for the judiciary. Gross, *Judicial Speech: Discipline and the First Amendment,* 36 SYRACUSE L.REV. 1181, 1226 (1986). The first category includes cases such as *In re Cunningham,* 57 N.Y.2d 270, 442 N.E.2d 434, 456 N.Y.S.2d 36 (1982), in which Judge Cunningham was disciplined for writing a letter to another judge indicating he would never change a sentence imposed by the latter judge. Although Judge Cunningham never failed to decide a case on its merits, he was disciplined because his statements had created the appearance that he had prejudged certain cases. *Id.* at 275, 442 N.E.2d at 435–

36, 456 N.Y.S.2d at 37–38. The second category is exemplified by *In re Cerbone,* 61 N.Y.2d 93, 460 N.E.2d 217, 472 N.Y.S.2d 76 (1984). Cerborne, a town court justice, was removed from office for involvement in a heated exchange in a tavern in which he used abusive and profane language embellished with racial slurs.

How, then, do we strike a balance between a judge's right of free speech and the State's right of promoting and preserving the integrity of the judicial system? The Fifth Circuit has addressed this question in the context of a civil rights action brought by a Texas justice of the peace challenging a public reprimand by the Texas Commission on Judicial Conduct. *Scott v. Flowers,* 910 F.2d 201 (5th Cir.1990). The reprimand stemmed from an open letter written by Judge Scott to county officials attacking the district attorney's office and the county court at law for dismissing the majority of traffic ticket appeals. Finding the communications to be "insensitive," the Commission found the judge's conduct to be inconsistent with the proper performance of his duties as a justice of the peace and served to cast public discredit upon the judiciary. He was warned to be more restrained and temperate in the future.

Judge Scott filed suit against the members of the Commission, both individually and in their official capacities, claiming that his letter and comments to the press were protected speech for which he could not constitutionally be subject to discipline. The district court granted summary judgment in favor of the Commission.

The Fifth Circuit began by noting that public employees occupy a unique position in first amendment jurisprudence. *Scott,* 910 F.2d at 210. While they do not shed constitutional protections when they enter the workplace, their rights must be balanced against the interests of the State in promoting the efficiency of the public services it performs through its employees. *Id., citing Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). In *Pickering,* the Court adopted a two-pronged approach to evaluate claims of first amendment violations by public employees. First, the Court must determine in light of the content, form, and context of the speech in question, whether it addresses a matter of legitimate public concern. *Scott,* 910 F.2d at 211, *citing Pickering,* 391 U.S. at 571, 88 S.Ct. at 1736. If so, the Court must then "balance the employee's first amendment rights against the governmental employer's countervailing interest in promoting the efficient performance of its normal functions." *Scott,* 910 F.2d at 211. If not, however, then the inquiry must end:

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive insight by the judiciary in the name of the First Amendment.

*Scott,* 910 F.2d at 210, *citing Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

While the Fifth Circuit found the content, form, and context of Judge Scott's letter to be a matter of legitimate public concern and moved from the first prong analysis to the balancing test encompassed within the second prong, our inquiry necessarily ends after the first prong, as we conclude that Respondent's statements to Aaron Thomas cannot be described as a matter of legitimate public concern. This is not a situation in which a judge spoke out concerning the administration of the courts, docket-management or funding disputes. It is instead a situation in which a judge, having identified himself according to his position, became so caught up in his own judicial power as to berate a citizen over a $3.00 parking fee. Accordingly, his statements are not entitled to first amendment protection.

*Item 4:*

***The Repair Shop Incident***

Respondent disputes the Commission's findings that telephoning Sam Naser and going to his repair shop are sufficient to justify conclusions that the conduct reflected incompetence or cast discredit on the judiciary or on the administration of justice. While Respondent admits that it was a mistake to go to the auto shop, he contends that his sole motivation was to provide a litigant with an adequate remedy. He further argues that his actions constituted mere legal error for which there is appellate review.

When a judge commits a legal error, it usually is a matter for appeal and does not raise a question of improper judicial conduct subject to judicial discipline. "Appellate courts, through review of proceedings, provide for the correction of most departures from judicial standards." *In the Matter of Davila,* 631 S.W.2d 723, 725 (Tex.1982), *citing In re Brown,* 512 S.W.2d 317, 322 (Tex.1974). However, legal error and judicial misconduct are not mutually exclusive; a judge is not immune from discipline merely because the judge's conduct also constitutes legal error. Stern, *Is Judicial Discipline in New York State a Threat to Judicial Independence?,* 7 PACE L.REV. at 303. From earliest times it has been recognized that "errors" are subject to discipline when the conduct shows an intentional disregard of the law. *Id.* No sound argument can be made that a judge should be immune from discipline for conduct demonstrating lack of fitness solely because the conduct also happens to constitute legal error. *Id.* "Judicial 'independence' encompasses making mistakes and committing 'error,' but was not intended to afford protection to judges who ignore the law or otherwise pose a threat to the administration of justice." *Id.* at 304–05.

Respondent's trip to the defendant's place of business and his commencement of an impromptu hearing in an attempt to personally enforce his prior order violated art. V, § 1–a(6)(A) of the Texas Constitution, and Canons 2 A, 2 B, and 3 B(2) of the Code of Judicial Conduct. A judge who abdicates his proper role as arbiter in favor of personal intervention and "self-help" remedies undermines the integrity of the judicial system and the administration of justice. Lawless judicial conduct, or a personal brand of justice in which the judge becomes a law unto himself, is as threatening to the concept of government under law as is the loss of judicial independence. *In re Ross,* 428 A.2d at 861.

*Item 5:*

***Persistent Conduct***

Respondent was charged with the use of profane and rude language toward Paul Grupe, Aaron Thomas, Pedro Gonzalez, and Sam Naser constituting persistent conduct that was clearly inconsistent with the proper performance of his duties and that cast public discredit upon the judiciary or the administration of justice in violation of TEX. CONST. art. V, § 1–a(6)A. The Special Master declined to find that improper language was used toward Naser. While he did specifically find that profane and rude language was directed toward Grupe, Thomas, and Gonzalez, this finding as to Gonzalez is in conflict with his findings as to the Item 3 charges. The Commission specifically charged Respondent with stating to Gonzalez, "That black bastard does not need to work for the public. You should get rid of him." The Special Master did "not find beyond a preponderance of the evidence" that this statement was made by Respondent, to Gonzalez or anyone else.

We have declined to consider the underlying facts of the Grupe incident. The Commission's findings in the sanctions ruling related to Respondent's "action, in requesting that Mr. Grupe come to your office to sign over (to Mr. Grupe's wife) title to a vehicle when there was no case involving Mr. Grupe pending in your court

and when he was involved in a divorce proceeding in district court." There was no finding at that time concerning rude or profane language. Because we will not go behind the sanctions ruling, we cannot consider any language which Respondent used toward Grupe or his attorney.

We are thus left only with rude and profane language addressed to Thomas. While we find that his use of the word "nigger" was at best rude and at worst profane, this one incident cannot reach the level of persistent conduct.[6] Accordingly, we find insufficient evidence to support Item 5.

The only allegations, charges and findings with regard to "persistent conduct" are those claims of rude and profane language arising in conjunction with Item 5. However, the Texas Constitution provides that a judge may be removed from office for "willful *or* persistent" violations of rules promulgated by the Supreme Court, for "willful" violation of the Code of Judicial Conduct, or "willful *or* persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice." [Emphasis added]. TEX. CONST. art. V, § 1–a(6)A. Because removal may be predicated upon willful or persistent conduct, stated disjunctively, our finding of insufficient evidence to support a finding of persistent conduct is not dispositive of these proceedings.

## *IMPOSITION OF SANCTIONS*

### ***Propriety of Sanctions***

We have stricken Items 1 and 5 from consideration in determining whether Respondent has violated the Texas Constitution and the Texas Code of Judicial Conduct. We have found sufficient evidence to support the Special Master's findings with regard to Items 2, 3 and 4. Accordingly, sanctions could be properly imposed based upon violations of the following:

- Article V, § 1–a(6)(A) of the Texas Constitution, providing in pertinent part that a judge may be disciplined, censured, or removed from office "for willful or persistent violation of rules promulgated by the Supreme Court of Texas, incompetence in performing the duties of the office, willful violation of the Code of Judicial Conduct, or willful or persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice."
- Canon 2 A of the Texas Code of Judicial Conduct—"A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."
- Canon 2 B of the Texas Code of Judicial Conduct—"A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others."
- Canon 3 B(2) of the Texas Code of Judicial Conduct—"A judge should be faithful to the law and shall maintain professional competence in it."
- Canon 4 A(1) of the Texas Code of Judicial Conduct—"A judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge."

"Willful" as applied in TEX. CONST. art. V, § 1–a(6)A "is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross indifference to his conduct."[7] *In re Thoma,* 873

6. "Persistent" means continuing or inclined to continue in a course without a change in function or structure. *In re Thoma,* 873 S.W.2d at 500, *citing* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, 877 (1984).

7. "Willful" is more than an error of judgment or a lack of diligence and encompasses conduct involving moral turpitude, dishonesty, corruption, misuse of office, or bad faith. *In re Thoma,* 873 S.W.2d at 489–90.

S.W.2d at 489. Respondent has misused the power of his office either intentionally or with gross indifference. His actions have cast public discredit upon the judiciary. We thus uphold the findings of the Special Master, adopted by the Commission, that Respondent's conduct as enumerated in Items 2, 3, and 4 was willful and that sanctions are appropriate. Having established judicial misconduct, we next address the severity of the sanctions imposed.

### *Removal*

In his fourteenth and final point of error, Respondent complains of the harshness of the sanctions. Removal from office is not the price exacted for every incident of judicial misconduct. *In the Matter of Davila,* 631 S.W.2d at 725. In determining appropriate disciplinary sanctions, we must be careful to assure the orderly administration of justice in the public interest. *In the Matter of Kellam,* 503 A.2d 1308, 1312 (Me.1986). Sanctions are not for vengeance or retribution. *Id.* Instead, we must design sanctions to restore and reaffirm public confidence in the administration of justice, and to announce publicly our recognition and condemnation of judicial misconduct. *Id.* We must also assess the seriousness of Respondent's behavior and the viability of rehabilitation. In so doing, we recognize that prior instances of misconduct are relevant for the purpose of determining the severity of the sanction. Gross, *Judicial Speech: Discipline and the First Amendment,* 36 SYRACUSE L.REV. at 1258.

The sanctions ruling issued by the Commission on February 16, 1996 ordered eight hours of education in the following particulars:

- That the role of judge must be distinguished from the role of ombudsman, mediator or arbitrator.[8]
- That attempts by a judge to resolve disputes 'informally' (outside of procedures established by law) is perilous.
- That any action by a judge without jurisdiction not only subjects the county to potential liability, but the judge to potential personal liability.
- That a judge must have jurisdiction prior to acting in a case.
- That a judge must accord to *every* person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law, Canon 3 B(8). [Emphasis original].
- That such right to be heard precludes ex parte communications (Canon 6 C(2)).

Respondent was further ordered to review with his mentor judge the following topics:

- How jurisdiction is established or determined.
- How parties are identified.
- The nature of a cause of action.
- How a suit is instituted.
- How the case is docketed and citation issued.
- Prejudgment remedies available.
- General trial procedures with or without jury.
- General nature of judgment.

The repair shop incident occurred in October 1996, some eight months after the Commission's order issued. Had Respondent obeyed the order and completed his training, he may well have understood the limitations of his powers and avoided these charges of abuse of power. Instead, Respondent elected to cast aside his prior opportunity for rehabilitation and ignored the Commission's order for additional judicial training. Removal is not too harsh a sanction.

8. We have used the word "arbiter" in describing the role of a judge. We pause here to note the legal distinction between an "arbiter" and an "arbitrator." An arbiter is a person bound to decide according to the rules of law and equity, as distinguished from an arbitrator, who may proceed wholly at his own discretion. BLACK'S LAW DICTIONARY, 5TH ED. 1979.

### *Prohibition from Holding Judicial Office*

This Tribunal is empowered pursuant to TEX. CONST. art. V, § 1–a(6)C and (9) to prohibit Respondent from holding judicial office in the future. It is not a consideration we undertake lightly.

### *Has the Electorate Been Disenfranchised?*

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964). "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims,* 377 U.S. 533, 555, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506 (1964).

The Texas Bill of Rights recognizes the concept of due process of law and provides:

> Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

TEX. CONST. art. I, § 19. Inherent is the concept that "[t]he faith of the people of Texas stands pledged to the preservation of a republican form of government." TEX. CONST. art. I, § 2. Thus, we hold sacred the right of the people to vote and the right not to be disenfranchised. The fundamental issue, then, is whether judicial misconduct deemed so severe by an appropriate review tribunal as to require removal or prohibition from holding judicial office serves to disenfranchise the electorate. We find it does not.

The Bill of Rights contains some pertinent limitations. Art. I, § 2 reserves to the people "the inalienable right to alter, reform or abolish their government in such manner as they may think expedient." Art. I, § 19 prohibits disenfranchisement "except by the due course of the law of the land." Art. V, § 1–a, relating to the retirement, censure, removal, and compensation of justices and judges was initially added to the Texas Constitution in 1948. This provision was amended November 2, 1965, November 3, 1970, November 8, 1977, and November 6, 1984, effective January 1, 1985. Art. XVII, § 1 provides that the Texas Constitution can only be amended by the joint efforts of the State legislature and the qualified voters. A proposed amendment must be approved by a vote of two-thirds of each house. Ratification is then required by a majority of qualified voters casting votes on the issue. Simply stated, the voters of Texas, the electorate itself, has approved this limitation on its ability to elect the judge of its choosing. We find no legal impediment to the Commission's recommendation of prohibition.

### *Factors to be Considered*

We are not directed by clear constitutional or statutory mandate as to the factors we should consider in reaching our decision, nor do we have the benefit of accumulated judicial interpretations. While there are several reported cases involving special courts of review, those proceedings do not address removal or prohibition. These more severe sanctions must be reviewed by a review tribunal pursuant to art. V, § 1–a(9) and Rules 11 and 12 of the RULES FOR THE REMOVAL OR RETIREMENT OF JUDGES. The opinion in *Thoma* does not address this issue; the Tribunal simply stated it would "affirm the recommendation of the State Commission on Judicial Conduct and further order that Respondent, John N. Thoma, be removed as Judge of the County Court at Law No. One of Galveston County, Texas, and further, that he be forever barred from holding judicial office." *In re Thoma,* 873 S.W.2d at 513.

While Respondent's verbal abuse of Aaron Thomas and his self-help techniques

perpetrated against Sam Naser constitute serious misconduct for which sanctions would be appropriate, these incidents standing alone might justify a reprimand or censure. However, when coupled with the failure to comply with a valid order from the Commission requiring additional judicial education involving topics which, had attention been paid, could have prevented additional misconduct, Respondent's actions justify removal.

Yet we are convinced that even worse than ignoring the Commission's order for additional education is the fact that Respondent asked a fellow jurist to lie to the Commission about his completion of the training. Such conduct is tantamount to an effort to perpetrate a fraud on the Commission. An additional factor which courts have considered in increasing the severity of a sanction is the failure of the judge to cooperate with the judicial commission. Gross, *Judicial Speech: Discipline and the First Amendment,* 36 Syracuse L.Rev. at 1259. "Failure to cooperate may be viewed as an indication that the judge feels himself to be above the law," an attitude which is harmful to the functioning of the judiciary and to the public's image of the judiciary. *Id.* Respondent failed to cooperate by urging Judge Forman to lie to the Commission about his completion of the additional judicial training, a lie he anticipated the Commission would rely upon. The Special Master also questioned Respondent's credibility during the formal proceedings, specifically finding that "[Respondent's] testimony at [the] hearing and his written statements and response to complainant Sam Naser are at such variance as to challenge the credibility of [Respondent] at that point."

The public at large is entitled to honesty and integrity in judicial officials elected to mete out justice, apportion equity, and adjudicate disputes. We cannot ask for more, but we should certainly not expect less, particularly when it is the robed arbiter who, when administering the oath to witnesses, cautions them to tell the truth, the whole truth, and nothing but the truth. The lie at issue here is not insignificant. It was designed to circumvent prior judicial discipline, and orchestrated to urge a fellow jurist to submit a false statement to the Commission, in hopes of preventing additional sanctions. We cannot distinguish it away, or minimize its importance, by calling it "fudging."

We reiterate and emphasize that sanctions imposed for judicial misconduct must restore and reaffirm public confidence in the administration of justice. With that goal in mind, we affirm the prohibition against holding judicial office in the future.

## CONCLUSION

We affirm the findings, conclusion, and recommendation of the State Commission on Judicial Conduct, and order that Respondent, Bill R. Lowery, be removed as Justice of the Peace, Precinct 2, Place 2, Irving, Dallas County, Texas. We further order that he be forever barred from holding judicial office.

Justice DON BURGESS filed a concurring and dissenting opinion.

Justice BURGESS, concurring and dissenting.

I concur in the majority's analysis of the various "Items." I respectfully dissent to the majority's disposition. I do not argue that Judge Lowery's actions are in any manner justifiable or do not constitute misconduct. My quarrel with the majority is two-fold: failing to remand to the Commission and ordering that Judge Lowery be forever barred from holding any judicial office in the future.

## THE REMAND

Tex. Const. art. V, § 1–a(8) states, in pertinent part:

> If, after formal hearing, or after considering the record and report of a Master, the Commission finds good cause therefor, it shall issue an order of public censure or it shall recommend to a re-

view tribunal the removal or retirement . . . of the person. . . .

Rule 10(m), Rules for Removal or Retirement of Judges, states:

> If, after hearing, upon considering the record and report of the special master, the commission finds good cause therefore, by affirmative vote of six of its members, it shall recommend to the review tribunal the removal, or retirement, as the case may be; or in the alternative, the commission may dismiss the case or publicly order a censure, reprimand, warning, or admonition. Six votes are required for a recommendation of removal or retirement.

TEX. CONST. art. V, § 1–a(9) states, in pertinent part:

> The review tribunal shall review the record of the proceedings on the law and the facts. . . . [I]t shall order public censure, retirement or removal, as it finds just and proper, or wholly reject the recommendation. . . .

It is the Commission's recommendation, based upon six votes of its members, for removal that triggers the review tribunal process. In this case the commission adopted the conclusions and recommendations of the Special Master in regards to five "Items." Thus the Commission's recommendation for removal was based upon all of these items. The majority has found item one, the Grupe incident, was improperly considered and item five, the "persistent conduct," is not supported by the evidence. Therefore, only three items should have been considered by the Commission in the underlying proceedings. Query, what would the Commission have recommended if they had only considered items two, three and four? In other words, would six members of the Commission have voted to recommend removal if they had only considered the three remaining items? The only way to answer these questions is to remand the proceedings to the Commission.

I have no quarrel with the majority's authority to make a de novo determination of an appropriate disposition. However, must the tribunal do so, or is remand an alternative? I believe it is. The tribunal is allowed to "wholly reject the recommendation." But must that rejection always be an "acquittal" or can it be a remand? There has been no interpretation of the term "reject" or the workings of the constitutional provision and accompanying rule. Although remand is not an enumerated option, I believe it is contained within the tribunal's authority to "reject" the recommendation. A remand to determine if the Commission would recommend removal in light of the tribunal's striking items one and five from consideration is consistent with the scheme established by the voters and the Supreme Court. For it is only through the Commission that a tribunal can consider a recommendation for removal and then order a removal. Were we sitting in our regular court of appeals mode, I believe we would most certainly conclution of an "improper judgment", *see* TEX.R.APP.P. 44.1, and reversal would be required. Therefore, while remand is not explicitly an option available to the tribunal, I believe it is an option. Consequently, I would remand the matter back to the Commission to reconsider its recommendations in light of items one and five being stricken.

## THE BAR FROM FOREVER HOLDING JUDICIAL OFFICE

The majority has correctly determined there is no legal impediment to either the Commission's recommendation of prohibition or the tribunal's order of prohibition. The majority also acknowledges "we are not directed by clear constitutional or statutory mandate as to the factors we should consider in reaching our decision, nor do we have the benefit of accumulated judicial interpretations." The majority then goes on to review the actions of Judge Lowery to justify the order forever barring him from holding judicial office. While the

majority discussed the general issue of disenfranchising the voters, they do not weigh this disenfranchisement in the instant case. Consequently, this tribunal, in a well-intended desire to appropriately punish Judge Lowery should not rush to "disenfranchise" the voters of Precinct 2 in Dallas County by deciding who is and is not eligible for office [1] and who they *cannot* elect as a judge in the future.

If there are no guidelines or directions as to what are the proper factors to consider in making this decision, perhaps Judge Lowery's misconduct should be measured against that of others who have received a range of sanctions from reprimands to removal and prohibition from holding future judicial office. *See and compare, In re Bell,* 894 S.W.2d 119, 131 (Tex.Spec.Ct.Rev.1995) (two violations of canons in contempt proceeding; public admonition upheld); *In re Thoma,* 873 S.W.2d 477, 483, 513 (Tex.Rev.Trib.1994, no appeal) (conspiring to extort money from a party in an action over which he exercised authority, engaging in *ex parte* communications with criminal defendants in numerous cases, and conducting *ex parte* proceedings in numerous cases; removal and prohibition from holding future judicial office upheld); *In re Sheppard,* 815 S.W.2d 917, 921 (Tex.Spec.Ct.Rev.1991) (shouting match with store personnel; public reprimand upheld); *In the Matter of Davila,* 631 S.W.2d 723, 725–26 (Tex. 1982) (twenty-six acts of nepotism, leaving the scene of an accident; removal and prohibition from holding future judicial office not upheld). While Judge Lowery's action in asking Judge Forman to falsify the report to the commission is egregious and can not be justified, this conduct falls between the conduct of Judge Davila and Judge Thoma. Therefore, if a remand is not an option, I would affirm the commission's recommendation to remove Judge Lowery from office, but would leave it to the wisdom of future voters whether Judge Lowery's past actions and future actions, "disqualify" him from further judicial service

1. *See* Tex.Elec.Code Ann. § 141.001 (Vernon 1986).

## JUDGMENT AND ORDER OF REMOVAL

This cause came on to be heard on the record of the proceedings below. The Review Tribunal [1] concludes the underlying fact issues contained in Item 1 of the Notice of Formal Proceedings may not be revisited since sanctions had previously been imposed by the State Commission on Judicial Conduct. It further finds insufficient evidence to support the findings of the Special Master, adopted by the Commission, with regard to the allegations contained in Item 5. Accordingly, Items 1 and 5 are stricken. The Review Tribunal upholds the findings of the Special Master, adopted by the Commission, that Respondent's conduct as enumerated in Items 2, 3 and 4 was willful and that sanctions are appropriate.

It is therefore ORDERED, ADJUDGED AND DECREED by the Review Tribunal that the recommendation of the Commission be affirmed and that Respondent be removed as Justice of the Peace, Precinct 2, Place 2, Irving, Dallas County, Texas,

It is further ORDERED, ADJUDGED, and DECREED that Respondent be forever barred from holding judicial office, and that this decision be certified below for

1. The Review Tribunal was composed of Justice Ann Crawford McClure, Eighth District Court of Appeals, El Paso, designated Presiding Justice; Justice Donald Ross, Sixth District Court of Appeals, Texarkana; Justice Bob Dickenson, Eleventh District Court of Appeals, Eastland; Justice Woodie Jones, Third District Court of Appeals, Austin; Justice Don Burgess, Ninth District Court of Appeals, Beaumont; Justice Bill Vance, Tenth District Court of Appeals, Waco; and Justice Roby Hadden, Twelfth District Court of Appeals, Tyler.

observance.[2]

It appearing that no costs are due this Review Tribunal by reason of the appeal herein, no further order is made with respect thereto.

IT IS SO ORDERED THIS 13TH DAY OF FEBRUARY, 1998.

/s/ Ann Crawford McClure

Ann Crawford McClure
Presiding Justice

2. The Clerk of the Court is hereby directed to forward a certified copy of the foregoing Judgment and Order of Removal to the Texas Secretary of State as well as to the County Clerk of Dallas County, Texas for observance.